## MID-CONTINENT LIFE INSURANCE CO. v. DAVIS.

No. 22469. Oct. 22, 1935.

Rittenhouse, Lee, Webster & Rittenhouse, for plaintiff in error.

Wilson, Wilson & Owens, for defendant in error.

PER CURIAM. This case was an action at law brought by the defendant in error, hereinafter called plaintiff, against the plaintiff in error, hereinafter called the defendant, to recover upon a policy of life insurance. The suit was brought in the district court of Oklahoma county, Okla. The plaintiff sought to recover $2,000, interest and costs.

The policy in question was issued by the defendant to and upon life of Dwight Layman Davis, wherein the defendant agreed to pay to James Franklin Davis, father of the insured, and in the event of his death prior to that of the insured, to Mary Ellen Davis, mother of the insured, the sum of $1,000, with an agreement to pay an additional $1,000 upon the death of the insured caused directly, independently, and exclusively of any and all other causes, from bodily injuries through external, violent and purely accidental means, excluding homicide or self-destruction.

The beneficiary named in the policy executed in writing an assignment of all her rights under said policy to the plaintiff.

The defendant admitted its liability for $1,000 upon the single liability under the terms of the policy sued on, but denied its liability for more than the single indemnity provided for in said policy.

Upon the admission of the defendant of its liability for $1,000, under the single indemnity provision of the said policy, upon motion of the plaintiff, the court rendered judgment for the plaintiff and against the defendant for $1,000, which has been paid and satisfied.

The material provision in the policy necessary to be considered in determining the single controverted question of the double indemnity liability under the policy is the following:

"Double Indemnity.

"Upon receipt of due proof that the death of the insured was caused directly, independently and exclusively of any and all other causes, from bodily injuries effected through external, violent and purely accidental means (excluding homicide or self-destruction, sane or insane, and, excluding death from injuries received in military or naval service in time of war, or as a result of participation by the insured in aeronautic or submarine expeditions or operations) and that such death occurred (a) within the premium paying period, and (b) before the insured attained the age of sixty years, and (c) before a default in any premium, and (d) within thirty days from the date of such accident, the Company will pay the face amount of this policy in full settlement hereof.

"Upon any anniversary of this policy the double indemnity benefit may be discontinued by returning this policy to the company for proper endorsement with written request from the insured (and assignee, if any) and if so discontinued, or if the insured attain the age of sixty, any premium thereafter due will be reduced by the amount of the premium charged for the double indemnity benefit.

"The annual premium for the double indemnity benefit is $2.00, and is included in

premium stated in the consideration clause of this policy.

"Oklahoma City, Oklahoma, May 27, 1929

"(Signed) R. T. Stuart, President.

"Attest:

"R. W. Reese,
 "Secretary

"Examined and countersigned by M. C. Oppelt, Registrar.

"Form D 1-2"

The facts in connection with the death of the insured, as shown by the testimony in the case, are substantially as follows:

The insured, together with another man and two women, was having a party of a rather wild nature on the first floor of an apartment house, known as the Jenkins Apartments in Oklahoma City, said party being on the 29th day of July, 1930. The witnesses vary slightly in their statements as to the hour of the accident which caused the death of the insured, but, considering all of the testimony, it must have happened soon after midnight. The testimony showed the night to be completely dark. The party became rather noisy and officers raided the particular apartment in which the party was being held, and there found that the two men and two women had been drinking liquor rather heavily, and also found a considerable quantity of alcohol in said apartment. The testimony further showed that there were twelve separate apartments in this particular apartment building, and that the two women occupied one of these apartments, and that the apartment in which the party was being held was the apartment of the other man. The testimony showed that the insured never had been at the rear of the apartment at any time previous to the fatal night; that he had come through the front door, and that he could observe that the windows in front of the apartment were only a short distance from the ground.

The officers informed the persons having the party, including the insured, that they must get ready to go to the police station with them. Some delay resulted in their getting ready, and the insured stretched himself across the bed in the room, and then jumped out the window which was near the bed. The testimony is conflicting as to how the insured went out the window, but the testimony offered by the defendant was to the effect that the insured jumped out of the window feet first, and that the officer jumped out of the window immediately after him. Photographs of the apartment, showing the

window from which the insured jumped, were exhibited in evidence. These photographs show that the ground upon which said apartment was located was sloping, and that the windows at the front part of the apartment were only a few feet from the ground, but that the windows in the back of the apartment from which the insured jumped were higher from the ground than the front windows, this being due to the sloping of the ground from the front to the rear of the building. There was a metal awning immediately under the window from which the insured jumped, which gave way when he alighted on it. The testimony shows conclusively that the apartment from which the insured emerged was on the first floor of said apartment house. The testimony does not disclose that the insured knew the physical conditions of the building and surroundings, especially as to the distance of the window from which he emerged to the ground below. There is no testimony in the record showing that the insured knew of the metal awning just below the window from which he emerged. That in jumping from the window the insured struck the metal awning and then fell to the ground below, and struck the ground in such a manner as to cause his skull to be fractured and causing a profuse paralysis of his entire lower extremities, which injuries caused the death of the insured within a very short time after he had made the fatal jump.

The testimony and photographs showed that the windows in the front part of the apartment were about four or five feet above the ground, and that the window from which the insured emerged was about nine and one-half feet above the ground.

It was the contention of the defendant, plaintiff in error, that where a policy of insurance insures against an injury or death effected conclusively by "accidental means", there could be no recovery where such injury or death is the result of the intentional and voluntary act of the insured, although such result may be entirely unexpected and undesigned.

The first and foremost question involved in this case is, whether there was an accident within the meaning of the policy. The policy, as above pointed out, indemnifies against loss from purely accidental means. We think that the death of the insured resulted from purely accidental means within the meaning of the policy. No doubt the insured found himself in an embarrassing situation, wherein he was confronted with being placed under arrest for a breach of the

peace or a misdemeanor under circumstances which would have been humiliating to him, and in all probability he intended to jump out of the window and flee from the officers who had or who were just about to arrest the members of the party, consisting of the insured and the three other persons. In doing this we feel that the insured had a right to assume that the window from which he emerged was no greater distance above the ground than the windows near the front door and near the front of the apartment.

We feel that the insured should have been safe in assuming that there was no metal awning under the window from which he jumped. The photographs introduced in evidence do not disclose any such awning underneath the front windows. We therefore feel that in jumping from said window, he must have assumed he would light on his feet and perhaps be able to run away from the officers, and possibly avoid the unfortunate predicament in which his frolic had placed him.

The following question of law now presents itself: Was the death of the insured caused by accidental means, or was it a voluntary taking of his own life or the natural and expected result of a voluntary act?

The courts have had frequent occasions to define the words "accidental injury" and "accidental death."

In the case of Standard Life & Accident Insurance Co. v. Schmaltz (Ark.) 53 S. W. 49, 52, the court, approving an instruction given by the trial court in a suit on accident policy, held that the term "accident" was used in the policy in its ordinary, popular sense, as meaning "happening by chance"; unexpectedly taking place; not according to the usual course of things; or not as expected; that, if a result is such as follows from ordinary means, voluntarily employed in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which preceded the injury, something unforeseen, unexpected, and unusual occurs, which produced the injury, then the injury has resulted through accidental means.

Also see Aetna Life Insurance Co. v. Little (Ark.) 225 S. W. 298; Metropolitan Casualty Ins. Co. v. Chambers (Ark.) 206 S. W. 64; Zurich General Accident & Liability Ins. Co. v. Flickenger, 33 F. (2d) 853; Rowe v. United Commercial Travelers Ass'n (Iowa) 172 N. W. 454; United States Mutual Accident Ass'n v. Barry, 131 U. S. 100.

The facts in the case of United States Mutual Accident Ass'n v. Barry, supra, are similar to the case at bar. In the Barry Case the insured, a doctor, in order to save time and distance, jumped from a platform about four feet from the ground, and from said jump injuries were sustained which caused his death. The policy in the Barry Case is identical in meaning with the policy in the present case. In the Barry Case the court instructed the jury as follows:

"If you find that injury was sustained, then the next question is, was it effected through external, violent, and accidental means? This is a pivotal point in the case, and therefore vitally important. The means must have been external, violent and accidental. Did an accident occur in the means through which the alleged bodily injury was effected?

"The jumping off the platform was the means by which the injury, if any, was sustained, was caused.

"Now, was there any thing accidental, unforeseen, involuntary, unexpected, in the act of jumping, from the time the deceased left the platform until he alighted on the ground?

"The term 'accidental' is here used in its ordinary popular sense, and in that sense it means 'happening by chance; unexpectedly taking place; not according to the usual course of things; or not as expected.

"In other words, if a result is such as follows from ordinary means voluntarily employed in a not unusual or unexpected way, then, I suppose, it cannot be called a result effected by accidental means.

"But if in the act which precedes the injury something unforeseen, unexpected, unusual, occurs which produces the injury, then the injury has resulted from the accident or through accidental means.

"We understand, from the testimony, without question, that the deceased jumped from the platform with his eyes open, for his own convenience, in the free exercise of his choice, and not from any perilous necessity. He encountered no obstacle in jumping, and he alighted on the ground in an erect posture. So far we proceed without difficulty; but you must go further and inquire, and here is the precise point on which the question turns. Was there or not any unexpected or unforeseen or involuntary movement of the body, from the time Dr. Barry left the platform until he reached the ground, or in the act of alighting. Did he or not alight on the ground just as he intended to do? Did he accomplish just what he intended to, in the way he intended to? Did he or not unexpectedly lose or relax his self-control, in his downward movement? Did his feet strike the ground as he intended or expected, or did they not? Did he or not miscalculate the

distance, and was there or not any involuntary turning of the body in the downward movement, or in the act of alighting on the ground? These are points directly pertinent to the question in hand.

"And I instruct you that if Dr. Barry jumped from the platform and alighted on the ground in the way he intended to do, and nothing unforeseen, unexpected, or involuntary occurred, changing or affecting the downward movement of his body as he expected or would naturally expect such a movement to be made, or causing him to strike the ground in any different way or position from that which he anticipated or would naturally anticipate, then any resulting injury was not effected through any accidental means. But if, in jumping or alighting on the ground, there occurred, from any cause, any unforeseen or involuntary movement, turn or strain of the body which brought about the alleged injury, or if there occurred any unforeseen circumstance which interfered with or changed such a downward movement as he expected to make, or as it would be natural to expect under such circumstances, and as caused him to alight on the ground in a different position or way from that which he intended or expected, and injury thereby resulted, then the injury would be attributable to accidental means.

"Of course, it is to be presumed that he expected to reach the ground safely and without injury. Now. to simplify the question and apply to its consideration a common-sense rule, Did anything, by chance or not as expected, happen, in the act of jumping or striking the ground, which caused an accident? This, I think, is the test by which you should be governed in determining whether the alleged injury, if any was sustained, was or was not effected through accidental means."

Judge Sanborn, speaking for the Circuit Court of Appeals of the Eighth Circuit, in Western Commercial Travelers' Ass'n v. Smith, 85 F. 401, 40 L. R. A. 653, laid down a definition of accidental means which has been approved by the Circuit Court of Appeals of the Second Circuit in Aetna Life Ins. Co. v. 'Brand, 265 F. 6, 13 A. L. R. 657, and by this court in the recent cases of Mutual Life Ins. Co. v. Dodge, 11 F. (2d) 486, 59 A. L. R. 1290, and Continental Casualty Co. v. Willis, 28 F. (2d) 707 (61 A. L. R. 1069) said:

"An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual design, or it falls under the maxim that every man must be held to intend the natural and probable consequence of his deeds. On the other hand, an effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing, * * * is produced by accidental means. It is produced by means which were neither designed nor calculated to cause it. Such an effect is not the result of design, cannot be reasonably anticipated, is unexpected, and is produced by an unusual combination of fortuitous circumstances. In other words, it is produced by accidental means."

The case of Union Accident Co. v. Willis, 44 Okla. 578, 145 P. 812, is somewhat similar to the present case in so far as the theory of law is concerned. In the Willis Case the policy provided that, "Indemnity shall not be payable for injuries fatal or otherwise, intentionally inflicted upon the insured by himself or some other person." The facts in the Willis Case show that Willis, the insured, and a person named Keys got into an ordinary fist fight, where only two or three blows were struck. Keys was a small man weighing but 133 pounds, and though right-handed, was unable to use his right hand during the fight on account of a broken bone, and Keys struck Willis, the insured, who was a heavier man with his left fist. The blow knocked the insured backward on the slanting pavement, with the result that his head struck the pavement, fracturing his skull and causing death. It was not even claimed that Keys intended the result that followed, but it was insisted that having struck Willis intentionally, a recovery could not be had on account of the above provision in the policy.

In deciding the Willis Case, the court uses the following language:

"As we have seen, the insured's death was accidental. * * * Had Keys had in his hand a deadly weapon, the use of which was reasonably calculated to produce death, and in fact did so, a different question would be presented. No motive for killing the latter is shown to have existed, and the means used indicates only an intention to strike the insured. The result was unforeseen and unusual, and not such as would ordinarily follow a blow with the fist. It was not the logical result of a deliberate act, and could not reasonably have been . anticipated by Keys, and he cannot be charged with a design of producing it. It was the result of fortuitous circumstances."

In the present case we believe the jury was justified in finding that the insured anticipated that there was nothing to prevent his alighting on the ground in an upright manner. We believe that the jury, from the evi-

dence, could have reasonably found that the act of jumping from the window did not entail any anticipation of serious results. No doubt, the metal awning which the insured struck in his jump changed the position of the insured so that in striking the ground he struck with his back or head, and not on his feet. We believe the jury is within its province in finding that the insured in making the fatal leap from the window must have thought that he could safely jump from said window and safely alight on his feet, and that after jumping from said window he struck the unforeseen and unexpected hazard of the unknown metal awning which caused him to strike the ground in an unexpected and unintentional and unusual way. From all of the circumstances surrounding this case, we feel that the insured had a right to believe that he was jumping out of a window only four or five feet from the ground, and that he anticipated no bodily harm or physical injuries by reason of said jump.

1 Corpus Juris, p. 427, sec. 73, states the general practice of law as follows:

"What are Accidental Injuries—a. In General. Where the effect is not the natural and probable consequence of the means which produce it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of the means, or an effect which the actor did not intend to produce, and which he cannot be charged with design of producing, it is produced by accidental means"

The defendant also contends that certain of the instructions of the court were erroneous, the instructions claimed to be objectionable being as follows:

### Instruction No. 1.

"The question to be determined by you gentlemen is, was the injury which was sustained by the deceased, and which caused his death, caused directly, independently and exclusively of any and all other causes, from bodily injuries effected through external, violent and purely accidental means, excluding homicide or self-destruction?

"If you find from a fair preponderance of the evidence that the deceased met his death in such manner, then your verdict should be for the plaintiff, and, on the other hand, if you fail to so find by a fair preponderance of the evidence, then your verdict should be for the defendant. And in this connection you are instructed that if the injury to the insured which resulted in his death resulted in some greater or less degree from his own acts, and the evidence be such that the jury may fairly find that he did not and could not have reasonably anticipated such result, and did not intend to produce it, then the injury would be deemed to have resulted

from an accident within the provisions of the policy in this case and would be deemed to have been caused by accidental means. The term 'accidental' as used in the policy in this case means 'happening by chance, unexpectedly taking place, not according to the usual course of things, or not as expected'; so that if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but if in the act which produces the injury something unforeseen, unexpected, unusual occurs which produces the injury, then the injury has resulted through accidental means.

"And as applied to this case, if the insured jumped from the window and alighted on the ground the way he intended to do, and nothing unforeseen, unexpected, or involuntary occurred changing or affecting the downward movement of his body as he expected, or would naturally expect such a movement to be made, or causing him to strike the ground in a different way or position from that which he anticipated, or would naturally anticipate, then any injury resulting was not effected through accidental means; but if in jumping or alighting on the ground there occurred from any cause any unforeseen or involuntary movement to turn or strain the body, which brought about the alleged injury, or if there occurred any unforeseen circumstances which interfered with or changed such a downward movement as he expected to be made, or as he would naturally expect under such circumstances, such as caused him to alight on the ground in a different position or way from that which he intended or expected and injury thereby resulting, then the injury would be attributable to accidental means."

### Instruction No. 2.

"The jury is instructed that the presumption of law attaching to the death of the insured, disclosed by the evidence, is against the intentional taking of the life on the part of the deceased, for the reason that the presumption of love of life is so strong it has the force of affirmative evidence, and will so prevail unless negatived by the surrounding facts and circumstances as to leave no other reasonable hypothesis than that of suicide, and in this connection you are instructed that the burden of proof is upon the defendant to show by a preponderance of the evidence that the death of the deceased was intentional on his part in order to rebut the aforesaid presumption of law."

The above instructions are proper and are similar to the instructions given and approved in the case of Rowe v. United States Commercial Travelers Ass'n (Iowa) 172 N. W. 454; Aetna Life Ins. Co. v. Little, supra; U. S. Mutual Accident Ass'n v. Barry, 131 U. S. 100, 33 L. Ed. 60.

The case at bar being a civil action triable to the jury, and there being competent evidence to support the verdict of the jury, and no prejudicial error of law shown in the instructions of the court, the verdict and finding of the jury will not be disturbed on appeal. Neary. Adm'r, et al. v. Etenburn et al., 87 Okla. 259, 209 P. 649; Alles & Boon et al. v. Grubbs, 148 Okla. 301, 298 P. 1049.

The defendant relies on several other assignments of error, but the other assignments are embodied in the foregoing discussion, and therefore need no further comment.

Upon the complete examination of the record, including instructions of the court, we think the case was fairly submitted to the jury. and we do not find any reversible error in the trial of said cause.

In writing this opinion we are not unmindful of the fact that there is a conflict in the law applicable to the facts, circumstances and contract in the present case, and we have followed the more liberal view of construing the law where such conflicts arise in favor of the insured. This liberal view has been followed by this court for many years, and we think rightfully so.

The cause is therefore affirmed.

The Supreme Court acknowledges the aid of Attorneys Denver N. Davison. J. W. Clark, and L. H. Harrell in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Davison, and approved by Mr. Clark and Mr. Harrell, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, WELCH, and CORN, JJ., concur.