NEW YORK LIFE INS. CO. v. WISE.

No. 34586. Nov. 18, 1952.

Rehearing Denied Jan. 6, 1953.

*251 P. 2d 1058.*

William F. Tucker and William H. Martin, Tulsa, for plaintiff in error.

Banker & Bonds, Muskogee, for defendant in error.

BINGAMAN, J.  Carl A. Wise died January 30, 1949.  At the time of his death he was the holder of a life insurance policy issued by New York Life Insurance Company of the face amount of $1,000, with a further provision for an additional $1,000 if his death resulted from accidental means as defined in the policy. The company paid to plaintiff, Fanny O. Wise, beneficiary in the policy, the face amount of $1,000, but refused to pay the additional $1,000 for accidental death whereupon plaintiff brought this action to recover said additional $1,000. The trial court heard the evidence, overruled the motion of defendant for a directed verdict and submitted the case to a jury, which rendered a verdict for plaintiff. From a judgment against it rendered on the verdict, defendant appeals.

From the record it appears without contradiction that Carl A. Wise, who was the manager of a hotel in Muskogee, on the morning of January 28, 1949, attempted, with the assistance of some other parties, to push a car which was stuck in the snow and ice in front of the hotel out away from the curb, and that he expended about an hour in this attempt, exerting himself violently. From the testimony it appears that he was a large and corpulent individual and that on a number of occasions when he tried to push the car away his feet would slip and he would stumble. After deciding that their efforts could not get the car loose, he gave up and went into the hotel, stating that he did not feel well, and later in the day vomited a bloody substance. Plaintiff called a physician who moved him to a hospital where he died on January 30th. Medical testimony was to the effect that the cause of his death was ruptured veins in the lower portion of his esophagus. His physician testified that although no post mortem examination of the body was made, it was his opinion that his condition was caused by ruptured veins in the lower part of the esophagus and in the proof of death made to defendant he stated that this was the cause, and that a contributory cause was cirrhosis of the liver of a duration of two years. He testified that cirrhosis of the liver had a tendency to produce varicose veins in the esophagus, and other physicians testified to the same effect. The attending physician also testified that sometime previously he had operated upon the deceased for varicose veins in his leg and had treated him for low blood pressure and anemia, and that his condition at a time shortly prior to his death showed much improvement. All physicians testified that if the veins in the esophagus were varicose violent exertion on the part of the deceased was liable to rupture them.

The policy of insurance, in so far as the double indemnity provisions are pertinent, reads as follows:

"The Double Indemnity Benefit specified on the first page hereof shall be payable upon receipt of due proof, on forms prescribed by the Company, that the death of the Insured resulted

directly and independently of all other causes from bodily injury effected solely though external, violent and accidental means and occurred within ninety days after such injury and prior to the anniversary of this policy on which the Insured's rated-up age at nearest birthday is 65 and prior to the maturity of this policy; provided, however, that such Double Indemnity Benefit shall not be payable if the Insured's death resulted, directly or indirectly, from ***(g) infirmity of mind or body; (h) illness or disease; ***."

Defendant in this court contends that the evidence sufficiently shows that the death of the insured was not due to a bodily injury effected solely through external, violent and accidental means, for the reason that the violent exertion in pushing the automobile would not constitute accidental means within the meaning of the provisions of the policy above set forth, citing numerous cases from other jurisdictions. Apparently these cases follow the opinion of the U.S. Supreme Court in U.S. Mutual Accident Association v. Barry, 131 U.S. 100, 33 L. Ed. 60, in which the Supreme Court of the United States ruled that a death produced by the voluntary act of the insured was not produced by accidental means unless between the voluntary act of the insured and the injury there intervened some mishap which, instead of the voluntary act, produced the injury. It also cites Prudential Insurance Co. of America v. Tidwell, 163 Okla. 39, 21 P. 2d 28, and Mid-Continent Life Insurance Co. v. Davis, 174 Okla. 262, 51 P. 2d 319. We are unable to agree with this contention.

In Provident Life & Accident Ins. Co. v. Green, 172 Okla. 591, 46 P. 2d 372, a case involving sunstroke, we pointed out that in Landress v. Phoenix Mutual Life Ins. Co., 291 U.S. 491, 54 S.Ct. 461, 78 L. Ed. 934, 90 A.L.R. 1382, the Supreme Court of the United States held that while death by sunstroke is an unusual or unexpected result of the doing by the insured of an intentional act, where no mischance, slip or mishap occurs in the doing of the act itself the injury

or death is not caused through accidental means, although the result may be unusual, unexpected and unforeseen. We further called attention to the dissenting opinion of Mr. Justice Cardozo, in that case, in which he stated that when a man died in such a way that his death is spoken of as an "accident," he died because of an accident and hence by accidental means, and that an attempted distinction between accidental results and accidental means could not be successfully maintained. In his dissenting opinion he quotes from the decision of Sanborn, J., in Western Commercial Travelers Association v. Smith (8 Cir.) 85 F. 405, 40 A.L.R. 653, as follows:

"An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual design, or it falls under the maxim that every man must be held to intend the natural and probable consequence of his deeds. On the other hand, an effect which is not the natural or probable consequence of the means which produced it an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing, under the maxim to which we have adverted, is produced by accidental means. It is produced by means which were neither designed nor calculated to cause it. Such an effect is not the result of design, cannot be reasonably anticipated, is unexpected, and is produced by an unusual combination of fortuitous circumstances; in other words, it is produced by accidental means."

We stated that we believed the reasoning of the dissenting opinion was better than that in the majority opinion in the Landress case, and held that if in the act which precedes the injury, although it is an intentional act, something unusual, unforeseen and unexpected occurs which produces the injury, then the injury was accidental. We further called attention to the two

clearly defined lines of cases on this question, one holding that the occurrence of an unexpected or unusual result by reason of the doing of an intentional act was not an accidental injury and the other holding that where the injury was the unusual and unexpected result of an intentional act the death was caused by accidental means.

In Mid-Continent Life Ins. Co. v. Davis, supra, we cited Corpus Juris, holding that where an effect was not the natural and probable consequence of the means which produced it, and did not ordinarily follow such means and could not be reasonably anticipated, it was produced by accidental means.

We followed the rule laid down in Provident Life & Accident Co. v. Green, supra, in Cooper v. New York Life Ins. Co., 198 Okla. 611, 180 P. 2d 654, and other cases therein cited, all of which seem to have followed the dissenting opinion of Justice Cardozo in the Landress case, supra. We therefore hold that the death of the deceased was effected by external, violent and accidental means within the provisions of the policy above quoted.

Defendant next contends that the death of the insured was caused or contributed to by infirmity of body, illness and disease. This for the reason that the testimony of the physicians was that cirrhosis of the liver tended to cause the formation of varicose veins in the esophagus. In support of this assertion defendant cites Federal Life Ins. Co. v. Firestone, 159 Okla. 228, 15 P. 2d 141, and Great Northern Life Ins. Co. v. Farmers Union Co-Operative Gin Co., 181 Okla. 370, 73 P. 2d 1155. But we think those cases are distinguishable from the instant case in that in the first cited case the insured, after being injured, went to his hotel room and indulged heavily in the use of alcoholic liquors which medical evidence showed tended to produce his death, and in the other a more or less dormant disease was aggravated by the injury and caused paralysis, atrophy of the injured arm and total disability and death. It is to be noted in those cases that the so-called disease directly contributed to the death of the deceased.

In the instant case no autopsy was made of the body of deceased and the testimony of the physicians was based upon surmise or conjecture. The disease was in no way aggravated or brought to life by the injury, but, according to their testimony, created a condition which caused the injury to be more easily produced. While the physicians testified that ordinarily such exertion would not produce a rupture of the veins in the esophagus if they were in normal condition, there is no evidence in this case, aside from their opinion, that they were not in a normal condition. We have frequently held that the judgment of experts or the opinion of skilled witnesses, even where unambiguous and uncontradicted, are not necessarily conclusive, but may be disregarded by the jury. Johnson Oil Refining Co. v. Elledge, 171 Okla. 398, 42 P. 2d 840, Magnolia Petroleum Co. v. Norton, 189 Okla. 252, 116 P. 2d 893, and other cases cited in Oklahoma Digest, Evidence, Key No. 570. It follows that the testimony of the physicians was not conclusive or binding on the jury or court and that the trial court did not err in overruling defendant's motion for directed verdict and submitting the cause to the jury.

For its last contention defendant urges that the trial court erred in refusing to give certain instructions requested by it and in giving the jury instruction No. 3. Examination of the instructions convinces us that the trial court substantially covered in its instructions the instructions requested by defendant, and that instruction No. 3 given by the court was not erroneous. In that instruction the trial court told the jury that if they found that the deceased suffered "a bursted blood vessel" in his esophagus from violent effort or strain, that if they further found that said accident and consequent death resulted directly or indirectly from in-

firmity of body, illness or disease, it was their duty to find for the defendant because of the restriction in the policy, and if the evidence was evenly balanced on this question, it was their duty to find for defendant. We see no error in this instruction.

Affirmed.

WELCH, CORN, GIBSON, and DAVISON, JJ., concur. HALLEY, V.C.J., and O'NEAL, JJ., dissent.