NEW YORK LIFE INSURANCE COMPANY, a Corporation, Plaintiff in Error,

v.

Phil C. KRAMER, Defendant in Error.

No. 37756.

Supreme Court of Oklahoma.

Dec. 24, 1957.

As Amended on Denial of Rehearing Feb. 4, 1958.

demnity provision of a life insurance policy dated January 7, 1930, issued by New York Life Insurance Company, defendant, to John H. Kramer, brother of the plaintiff, who died August 28, 1953. The parties will be referred to herein as they appeared in the trial court, and the deceased as insured.

The double indemnity provisions of the policy are as follows:

"The Double Indemnity provided on the first page hereof shall be payable upon receipt of due proof that the death of the Insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means and occurred within ninety days after such injury.

"Double Indemnity shall not be payable if the Insured's death resulted from self-destruction, whether sane or insane; * * * or, directly or indirectly, from infirmity of mind or body, from illness or disease * *."

At the conclusion of all the evidence the cause was submitted to the jury under proper instructions of the court, and a verdict was returned for the plaintiff for the amount of the double indemnity, $2,-500.

For reversal the defendant contends:

1. "The death of the insured was not due to bodily injury effected solely through external, violent and accidental means within the meaning of the double indemnity provisions of the policy sued upon.

2. "Infirmity of body, illness and disease caused or contributed to the death of the insured."

There were three doctors who testified in this case, two for the plaintiff and one for the defendant. They qualified as expert witnesses. The following question was given the first doctor who testified for the plaintiff:

"Q. * * * Doctor, assuming that John Kramer, at the time of his death,

William H. Martin, Tulsa, for plaintiff in error.

Ralph C. Thomas, Rucker, Tabor & Cox, Tulsa, for defendant in error.

CORN, Vice Chief Justice.

This action was brought by Phil C. Kramer, beneficiary, under a double in-

was fifty-one years of age, that in August of 1953, Mr. Kramer went to a guest ranch in the mountains of Colorado; for, at least, three days prior to his death, the evidence will show that he fished in a stream that was about a mile from the cabin, that he apparently was in good health, and was enjoying himself; that on the 28th day of August, 1953, a fire broke out in a building there in this fishing camp, that Mr. Kramer ran as fast as he could, some thirty steps; the evidence will show that this rancher that was with him, and they thought, or was afraid that there were some people in this building that was burning, and they bumped and pushed on the door to try to get the door down, and Mr. Kramer hit on the door with his shoulder, in company with this rancher; that when Mr. Kramer and the other fellow were unable to break the door down, he got an ax, and started chopping it, and the door was hard, and the ax bounced off the wood; that there was considerable amount of excitement, due to the fire and fear there was some one in the burning structure; that Mr. Kramer's appearance was like all the others, he was quite excited, that Mr. Kramer was using this ax to hit the door, that he hit it twice, and as he came back the third time he stumbled and fell and died within a matter of almost minutes; now Doctor, what I want to know, do you have an opinion, based on a reasonable degree of medical certainty as to whether or not Mr. Kramer, assuming those facts to be true, died as a result of this excitement and this exertion and as a result of external and violent and accidental means? A. I have.

"Q. What is it, please? A. That he did."

This same question, in substance, was given the other doctor who testified for the plaintiff and his answer, in effect, was the same.

On cross-examination by the defendant of the first doctor who testified, the following question was asked and answer given:

"Q. * * *. If a man fifty-one years of age, weighing approximately two hundred pounds, and having heart disease for over a period of at least a year and a half to two years prior to his death, perhaps longer than that, engages in trying to put out a fire in the manner described to you, and he pushed on the door, and he picked up an ax and swung the ax some two or three times against the door, and then collapsed, and was immediately dead; would you say a man in that condition could be said to die wholly as the result of excitement? A. This man died suddenly, almost instantaneously; that is evidence that he died of a heart condition, he had violently exerted himself by running thirty steps, he had tried to knock down the door coupled with the emotional exertion and emotional excitement and the fact he died suddenly during these set of conditions, makes it quite evident to me that he died wholly, and the proximate cause of his death was his mental and physical exertion, and I have seen it happen so many times, people kicking engines, pushing cars, that I am thoroughly convinced that was the cause of his death.

"Q. Would you say that had Mr. Kramer's heart been in a normal condition that with the kind of excitement or exertion that has been related that death would be due solely to the excitement or exertion? A. Yes, I think his death, under these conditions was caused by the mental excitement, the mental exertion and the physical exertion."

The testimony of the doctor who testified for the defendant, in part is as follows:

"Q. From your examination of Mr. Kramer made on the occasion concerning which you testified, and the findings which you have made, are you in a

position to state what, in your opinion, was the cause of his death? A. In my opinion, this man died of a heart disease, he died of coronary artery heart disease.

"Q. From your examination of Mr. Kramer made on the occasion concerning which you testified, and the findings which you have made, are you in a position to state what, in your opinion, was the cause of his death? A. In my opinion, this man died of a heart disease, he died of coronary artery heart disease.

"Q. Now, it has not been introduced in evidence, but I understand there will be evidence introduced that will show that Mr. Kramer died a sudden death on August 28, 1953, at Pagosa Springs, Colorado, that he had shortly—shortly preceding his death, he had engaged in some effort to reach a fire, or to go to the back door of a building where a fire was occurring, and he had ran some thirty steps from the front porch of this building to the rear, and he and another man, O. O. Dickinson, had pushed on the back door in an effort to open it, and not being able to open the door, Mr. Kramer had found an ax, and had struck the back door, which was evidently of log structure, struck the back door about two times with the ax, and just started the three attempt to strike it, and collapsed and immediately died. Dr. X from what you know of Mr. Kramer's condition, and medical background, would you say that that exertion and any excitement might have attended this fire was and of itself enough to produce a sudden death? A. It is my opinion that normal healthy people do not die sudden deaths in that manner. I do not consider that situation in itself of sufficient intensity or violent enough to result in a person's death if they are of normal healthy individual.

"Q. Dr. X is it your opinion that the sudden death of Mr. Kramer occurring on August 28, 1953, was produced

and caused by a condition of his heart, a heart disease? A. Yes, I feel that his death was caused by his heart disease."

In support of the contention of the plaintiff that it was an accident that caused the death of the insured, he cites New York Life Ins. Co. v. Wise, 207 Okl. 622, 251 P.2d 1058, 35 A.L.R.2d 1099. An accidental death under the terms of this policy is an unintended result of an intentional act.

■ The well established rule of this court in a case tried to a jury, under proper instructions by the court, where the evidence is conflicting, a judgment rendered on a jury verdict will not be disturbed on appeal to this court.

Judgment affirmed.