BENNINGFIELD v. FISCHER-COLUMBO



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:BENNINGFIELD v. FISCHER-COLUMBO

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 BENNINGFIELD v. FISCHER-COLUMBO
2021 OK CIV APP 18
Case Number: 118440
Decided: 04/05/2021
Mandate Issued: 04/28/2021
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2021 OK CIV APP 18, __ P.3d __

 

MARY JESSICA BENNINGFIELD, an individual, Plaintiff/Appellant,
v.
JORDAN FISCHER-COLUMBO, an individual, Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA

HONORABLE REBECCA BRETT NIGHTINGALE, TRIAL JUDGE

AFFIRMED

David C. Bean, Robert L. Rode, THE RODE LAW FIRM, PLLC, Tulsa, Oklahoma, for Plaintiff/Appellant,

Elizabeth D. Oglesby, ANGELA D. AILES & ASSOCIATES, Oklahoma City, Oklahoma, for Defendant/Appellee.

THOMAS E. PRINCE, JUDGE:

¶1 This appeal arises out of an action by Mary Jessica Benningfield ("Appellant") against Jordan Fischer-Columbo ("Appellee") for damages Appellant claims arose from a rear-end collision with Appellee. Following a multiday trial, the jury returned a verdict in favor of Appellee; and, accordingly, the trial court entered judgment in Appellee's favor. Appellant thereafter filed this appeal, wherein she contends the trial court committed reversible error when it (1) denied Appellant's motion for a directed verdict based on the testimony by Appellee's medical expert that Appellant sustained cervical, lumbar, and shoulder strain injuries as a result of the automobile accident and (2) admitted evidence of Appellee's medical expert over her objection. Both because the jury is the conclusive judge of the evidence, including the credibility of the witnesses, and because the trial court's rulings on the admission of evidence do not demonstrate a clear abuse of discretion, we conclude the trial court did not commit reversible error. Therefore, we affirm.

BACKGROUND

¶2 On May 20, 2015, Appellee rear-ended Appellant's vehicle which was stopped at a red light. Despite the rear-end collision, Appellant did not seek or receive medical treatment for approximately five months. On October 21, 2015, Appellant presented for treatment with a chiropractor with complaints of neck, back, and left shoulder pain. MRI imaging was performed on Appellant's lumbar spine, left shoulder, and cervical spine. Reports for the MRI imaging state, in part: that the lumbar spine imaging was unremarkable; that the left shoulder imaging revealed subtle tendinopathy of the rotator cuff but no obvious tear; and that the cervical spine imaging revealed a mild disc bulge at C5-6, without focal herniation and no evidence of traumatic injury. Appellant underwent chiropractic treatment from October 2015 until March 2016.

¶3 In March 2016, Appellant's chiropractor referred her to an orthopedic surgeon, Jason Sparks, D.O. for further evaluation. Following an examination of Appellant, Dr. Sparks prescribed a muscle relaxer and recommended Appellant continue physical therapy. Appellant periodically returned to see Dr. Sparks. After learning an injection he administered in Appellant's left shoulder only helped for a couple of weeks, Dr. Sparks recommended Appellant see a shoulder specialist.

¶4 On September 4, 2018--more than three years after the accident--Appellant was examined by James Mayoza, M.D. After reviewing a March 23, 2016 MRI of Appellant's left shoulder, Dr. Mayoza reported that it showed a partial tear of the supraspinatus and infraspinatus rotator cuff muscles of the left shoulder and a partial tear of the left biceps tendon. On January 18, 2019, Appellant's left shoulder was surgically repaired.

¶5 On April 13, 2017, Appellant filed suit against Appellee on a theory of negligence, seeking relief in the form of damages proximately caused by the May 2015 accident. The trial court granted Appellant's Motion for Partial Summary Judgment as to the Issue of Liability Only on September 5, 2018. Appellee admitted fault for causing the accident, but she challenged the nature, extent, and causation of Appellant's claimed injuries.

¶6 On October 24, 2018, Appellee's medical expert, Thomas Craven, M.D., conducted an Independent Medical Examination ("IME"). In the IME Report's "Impression" section, Dr. Craven reported it was his opinion Appellant had sustained injuries as a result of the May 2015 rear-end collision, stating, in part: "I do feel [Appellant] did sustain a cervical, lumbar, and left shoulder strain as a result of the . . . accident from May 20, 2015." In his videotaped trial deposition, however, Dr. Craven clarified that his opinion--that Appellant had sustained injuries as a result of the accident--was based solely upon subjective evidence: i.e., how Appellant stated her history of complaints during the IME:

Q. (By Ms. Oglesby) All right. Uh, do you have an opinion as to whether the treatment itself was reasonable and necessary as a result of the May 20th, 2015 accident?

***

A. (By Dr. Craven) Um-m, . . . I do . . . have the opinion she did have a cervical, lumbar, shoulder strain, and I do think physical therapy or chiropractic is of benefit up to about, uh, six to ten weeks. Everybody's different. Uh, but she definitely had pain.

In my opinion, it's--it's, uh, a strain. And over 96 percent, 98 percent get better with, uh, chiropractic therapy and anti-inflammatory, muscle relaxers.

***

Q. Okay. So you found no, um-m, objective findings of an acute injury as related to this accident, correct?

A. Uh, so as far as--that's correct. The MRI scans showed no acute--the only thing that would be different is if you'd performed a physical exam way back, which I didn't see her then, you might see some spasms, some swelling. Uh, so--

***

Q. Uh, at the time of--that you examined her, did you find any objective evidence support her--to support her ongoing complaints?

A. No.

***

Q. So is there any diagnostic test--diagnostic tests that have been performed which could support her subjective complaints?

A. Well, you can have--so, uh, you can have a strain and have a normal MRI, so--and--but this MRI wasn't performed till many months after the motor vehicle accident. So I'm basing my opinion on her subjective history of her complaints.

(all emphases added).

¶7 At trial, the trial court admitted all of Appellant's relevant medical evidence, and the jury heard videotaped testimony of Plaintiff's medical expert, Dr. Mayoza, and Appellee's medical expert, Dr. Craven. Dr. Mayoza, testified, in part, that it is not unusual for someone in an automobile accident to wait five months before seeking treatment. Dr. Mayoza also wrote in a September 4, 2018 medical report that Appellant's injuries are "the direct result of the collision occurring on 05/20/15 with injury to the patient's left shoulder and suspicioned cervical spine injury . . . ."

¶8 The case was submitted to the jury, which after deliberation returned a verdict in favor of Appellee. This appeal followed.

STANDARD OF REVIEW

¶9 A trial court's denial of a motion for a directed verdict is reviewed de novo. Computer Publications, Inc. v. Welton, 2002 OK 50, ¶ 6, 49 P.3d 732, 735 (citation omitted). "Regarding as true all evidence favorable to the non-moving party and all reasonable inferences drawn therefrom, and disregarding all evidence favorable to the moving party, [the appellate court] must affirm the denial unless there is an entire absence of proof on a material issue." Id. (citations omitted); cf. Hartley v. Herndon, 2002 OK CIV APP 55, ¶ 5, 46 P.3d 186, 188 (citations omitted). Moreover, where there are questions of fact or inference "which reasonable people could choose to accept or reject," a motion for a directed verdict should be denied because such questions are the "sole province of the jury." Moses v. Haney, 1986 OK 62, ¶ 16, 725 P.2d 866, 870; cf. Cline v. DaimlerChrysler Co., 2005 OK CIV APP 31, ¶ 9, 114 P.3d 468, 473.

¶10 A trial court's ruling to admit or exclude evidence, including the admissibility of expert testimony, is reviewed for a clear abuse of discretion. Christian v. Gray, 2003 OK 10, ¶ 42, 65 P.3d 591, 608. "An abuse of discretion occurs when a court bases its decision on an erroneous conclusion of law or where there is no rational basis in the evidence for the ruling." Id. ¶ 43 (citation omitted). Moreover, "[b]efore any claimed error concerning the admission or exclusion of evidence will be deemed reversible error, an affirmative showing of prejudicial error must be made." Kahre v. Kahre, 1995 OK 133, ¶ 45, 916 P.2d 1355, 1365 (citations omitted).

ANALYSIS

Appellant's Motion for a Directed Verdict

¶11 Appellant first contends the trial court committed reversible error when it denied her motion for a directed verdict. In particular, Appellant asserts the jury should have been advised a verdict had been directed in her favor because she made a prima facie case of negligence by establishing duty, breach, and proximate cause--all three of which must be established to recover in a personal injury action under Oklahoma law. McKellips v. Saint Francis Hospital, Inc., 1987 OK 69, ¶ 8, 741 P.2d 467, 470. In this case, the only element left unresolved for trial was element three; or, whether Appellant's injuries were proximately caused by Appellee's breach of duty. Appellant contends proximate cause, at least for some of her injuries, was established when, inter alia, Appellee's medical expert testified, to a degree of medical certainty, that Appellant sustained neck, back, and shoulder strains as a result of the rear-end collision. Because all three elements of her claim were allegedly uncontroverted, Appellant concludes the question of negligence became a question of law for the court and should not have been submitted to the jury. We disagree.

¶12 Despite the testimony by Appellee's medical expert that Appellant had sustained cervical, lumbar, and shoulder strain injuries as a result of the accident, questions of fact over which reasonable minds could differ remained. Indeed, Appellee's medical expert, Dr. Craven, clearly stated his opinion that Appellant had been injured in the accident was based solely upon subjective evidence, or "the history [Appellant gave him] where [she was] hurt." Dr. Craven maintained, however, there was no objective evidence Appellant suffered acute injury as a result of the rear-end collision.

¶13 It is well settled that a jury is "free to either accept or disregard all, some, or parts of [an] expert's opinion." Black v. Ferrellgas, Inc., 2018 OK CIV APP 38, ¶ 22, 417 P.3d 1267, 1273; cf. Badillo v. Mid Century Insurance Co., 2005 OK 48, ¶ 62, 121 P.3d 1080, 1104 ("Questions concerning witness credibility are for the jury's consideration.") (citation omitted); Holley v. Shephard, 1987 OK 92, ¶ 7, 744 P.2d 945, 947 ("In a matter tried to a jury[,] the jury is . . . the exclusive judge of the evidence and the credibility of the testimony of the witnesses") (citations omitted); New York Life Insurance Company v. Wise, 1952 OK 417, ¶ 10, 251 P.2d 1058, 1061--1062 ("We have frequently held that the judgment of experts [], even where unambiguous and uncontradicted, are not necessarily conclusive, but may be disregarded by the jury. . . . [T]he testimony of the physicians was not conclusive or binding on the jury or court and that the trial court did not err in overruling defendant's motion for directed verdict and submitting the cause to the jury.") (citations omitted); OUJI--CIV--3.21 ("[The] jury may consider the testimony of [expert] witnesses and give it such weight as [they] think it should have, but the value to be given [expert] testimony is for [the jury] to determine . . . and is to be given such value as [the jury] think[s] it is entitled to receive").

¶14 Although medical experts may utilize a plaintiff's self-reported medical history for purposes of forming an opinion as to causation, as occurred in this case, the weight of the medical expert's opinion is an issue of fact for the factfinder and not an issue of law for the court. Gray, 2003 OK 10, ¶¶ 29 & 50 ("A physician using a patient's history is part of a method to determine causation of an injury." *** "[And], a plaintiff bears the burden of persuasion should the evidence be allowed to reach the jury.") (citations omitted); 12 O.S. §2703 ("The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. . ."); 12 O.S. §2803(4) ("Statements made for purposes of medical diagnosis or treatment and describing medical history, [or] past or present symptoms" are "not excluded by the hearsay rule."); see also Cooper v. Carl A. Nelson & Co., 211 F.3d 1008, 1021 (7th Cir. 2000), as amended on denial of reh'g and reh'g en banc (June 1, 2000) (where the court held that the examining "physician [had] employed the accepted diagnostic tool of examination accompanied by physical history as related by the patient . . . [and that] [t]he proper method of attacking evidence that is admissible but subject to doubt is to cross-examine vigorously, to present contrary evidence, and to give careful instructions on the burden of proof . . . .") (citations omitted).

¶15 The persuasive quality of Appellee's medical expert's opinion could only have been properly considered in relation to the fact that it was based solely upon subjective evidence, or "the history [Appellant gave him] where [she was] hurt." See 1 Leo H. Whinery, Courtroom Guide: Oklahoma Evidence Code § 2701, cmt. "Disclosure of Underlying Facts" (2011); Debernard v. Reed, 277 A.2d 684, 686 (Del. 1971) (reviewing a trial court's denial of a new trial after the jury returned a defendant's verdict on the issue of damages); Essenburg v. Cabane, 196 F. Supp. 83, 88 (D. Haw. 1961) ("It was for the jury, not [the parties' medical experts], to make a final determination as to whether [Appellant's] subjective testimony was sufficient to prove that [Appellant] had sustained any injury at all.").

¶16 After review, we find that the testimony by Appellee's medical expert, Dr. Craven--that Appellant had sustained injuries as a result of the May 2015 accident--did not require the trial court to direct a verdict on the issue of causation for the Appellant because the testimony of Dr. Craven in question was based solely upon subjective evidence and also because there was other evidence which contradicted Appellant's position and/or supported Appellee's position, including the following: (1) that Appellant tarried for approximately five months before seeking medical care (and the significance of this delay is exemplified by the fact that, prior to the accident at issue here, Appellant had previously been injured and had immediately sought medical care); (2) that approximately three years elapsed between the date of the accident and Appellant's shoulder surgery; and (3) that Appellant, as her disabled husband's primary caretaker, regularly lifted him in and out of a wheelchair to move him.

¶17 In this case, the jury heard and weighed the testimony on causation; was instructed on the applicable law; and after deliberation returned a verdict in favor of Appellee. Because the jury is the conclusive judge of the evidence, including the credibility of the testimony of both lay and expert witnesses, we hold the trial court did not err when it denied Appellant's motion for a directed verdict on causation and cost of treatment for some of her neck, back, and shoulder injuries.

Appellant's Objections to the Admission of Evidence

¶18 Appellant also contends the trial court committed reversible error when it admitted evidence of Appellee's medical expert over her objection. In particular, Appellant asserts the trial court's overruling of her objections to portions of Appellee's medical expert's videotaped trial deposition amounted to a prejudicial "trial by ambush" in contravention of a tripartite test set forth in West v. Cajun's Wharf, 1988 OK 92, ¶ 21, 770 P.2d 558, 564 (setting forth a three-part test for the granting of a motion for a new trial, which "should be granted if[:] (1) the identity and/or location of a witness was withheld by a party . . .; (2) that witness'[] testimony would have been such that the moving party suffered significant prejudice by its absence; and (3) the moving party exercised due diligence on his own part prior to trial."). We are not so persuaded. After all, in West, the Appellant (the plaintiff below) asked the reviewing court for a new trial based on allegations of "significant prejudice" after a defendant "fail[ed] to supplement its response to interrogatories." Id. ¶ 1. After review on appeal, the court granted Appellant's request after finding the defendant's failure to identify or disclose the location of a key witness resulted in significant prejudice to the plaintiff. Id. ¶¶ 1, 3. Unlike in West, however, this case did not turn on an undisclosed witness (Appellant knew Dr. Craven was Appellee's medical expert). Instead, in this case there was, at most, what Appellant has characterized as undisclosed, or withheld, information--i.e., Dr. Craven's testimony about the surgery Appellant underwent after Dr. Craven conducted his IME. Here, the trial court properly admitted Appellee's medical expert's testimony after appraising the relevant timelines.

¶19 Moreover, the only "test" applicable in this part of the appeal is whether the trial court's admission of evidence resulted in prejudicial error. Kahre, 1995 OK 133, ¶ 45. If it didn't, there is no reversible error under the standard of review set forth above. Id. Here, Appellant has made no affirmative showing of prejudicial error based on the trial court's decision to permit Appellee's medical expert to testify about medical evidence that was unavailable to him at the time he conducted his IME. Because Appellant has not demonstrated prejudicial error based on the trial court's rulings admitting Appellee's evidence, we conclude the trial court did not abuse its discretion when it admitted Dr. Craven's testimony over Appellant's objection.

CONCLUSION

¶20 Both because the jury is the conclusive judge of the evidence, including the credibility of the witnesses, and because the trial court's rulings on the admission of evidence do not demonstrate a clear abuse of discretion, we conclude the trial court did not commit reversible error and, therefore, affirm.

GOREE, P.J., and MITCHELL, J., concur.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2002 OK CIV APP 55, 46 P.3d 186, HARTLEY v. HERNDON
Cited
 2005 OK CIV APP 31, 114 P.3d 468, CLINE v. DAIMLERCHRYSLER COMPANY
Discussed
 2018 OK CIV APP 38, 417 P.3d 1267, BLACK v. FERRELLGAS
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1986 OK 62, 725 P.2d 866, 57 OBJ 2365, Moses v. Haney
Discussed
 1987 OK 69, 741 P.2d 467, 58 OBJ 2229, McKellips v. Saint Francis Hosp., Inc.
Discussed
 1987 OK 92, 744 P.2d 945, 58 OBJ 2786, Holley v. Shepard
Discussed
 1988 OK 92, 770 P.2d 558, 59 OBJ 1973, West v. Cajun's Wharf, Inc.
Discussed
 1952 OK 417, 251 P.2d 1058, 207 Okla 622, NEW YORK LIFE INS. CO. v. WISE
Discussed
 2002 OK 50, 49 P.3d 732, COMPUTER PUBLICATIONS, INC. v. WELTON
Discussed
 1995 OK 133, 916 P.2d 1355, 66 OBJ 3771, Kahre v. Kahre
Discussed at Length
 2003 OK 10, 65 P.3d 591, CHRISTIAN v. GRAY
Discussed at Length
 2005 OK 48, 121 P.3d 1080, BADILLO v. MID CENTURY INSURANCE COMPANY
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2703, Bases of Opinion Testimony by Experts
Cited
 12 O.S. 2803, Hearsay Exceptions - Availability of Declarant Immaterial
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA