2002 OK 26

**Sandra W. CRANFILL, Surviving Spouse of Cortez L. Cranfill, Plaintiff,**

v.

**AETNA LIFE INSURANCE COMPANY, Defendant.**

No. 96,843.

Supreme Court of Oklahoma.

April 9, 2002.

George D. Davis, David A. Walls, Judy A. Walraven, Oklahoma City, Oklahoma, for Plaintiff.

Mark D. Spencer, Sheryl N. Young, Oklahoma City, Oklahoma, for Defendant.

BOUDREAU, Justice:

¶ 1 Pursuant to the Uniform Certification of Questions of Law Act, 20 O.S.2001, §§ 1601 *et seq.*, the United States District Court for the Western District of Oklahoma, Ralph G. Thompson, certified the following questions:[1]

A. Under Oklahoma law, for purposes of an accidental death and dismemberment insurance policy, is an insured's death "accidental" or is it an "intentionally self-inflicted injury" when the insured intentionally consumes alcohol to a blood alcohol level more than two and one-half times the legal limit for operating a motor vehicle and then dies in a single-vehicle accident caused by the act of drinking and driving?

B. For purposes of coverage under an accidental death and dismemberment insurance policy, does Oklahoma public policy prohibit an insured or the insured's beneficiary from recovering accidental death benefits when the insured intentionally consumes alcohol to a blood alcohol level more than two and one-half times the legal limit for operating a motor vehicle and then

dies in a single-vehicle accident caused by the act of drinking and driving?

¶ 2 We briefly recite the undisputed facts to place the certified questions in context. Cortez L. Cranfill was killed in a one-vehicle wreck while he was driving alone in Colorado.[2] He was driving a pickup truck and hauling a utility trailer from his home in Oklahoma to a cabin in Colorado. The traffic accident report states that about 9:00 p.m. the pickup ran off the right side of the road, overcorrected, ran off the left side of the road, hit a signpost, went airborne and ultimately collided with the ground. Mr. Cranfill was not wearing a seatbelt and was ejected out the back window. Several bottles of liquor were found in the pickup. Some were empty and some had not yet been opened. At the time of his death Mr. Cranfill's blood alcohol level was 254 mg/dL, more than two and one-half times the legal limit of 100 mg/dL for operating a motor vehicle in Colorado. The parties have stipulated that Mr. Cranfill's consumption of alcohol while driving the pickup resulted in his death.

¶ 3 Mr. Cranfill's surviving spouse, Sandra W. Cranfill, seeks insurance benefits for the death of her husband pursuant to an accidental death policy issued by the Oklahoma Conference of the United Methodist Church and underwritten by defendant Aetna Life Insurance Company (Aetna).[3] The policy provides coverage for loss of life as a result of bodily injury suffered in an "accident." The policy excludes coverage for losses caused or contributed to by "intentionally self-inflicted injury." The policy does not define either "accident" or "intentionally self-inflicted injury." The policy does not contain an exclusion for a loss which occurs "while intoxicated" or "as a result of intoxication" or

1. Because Aetna's brief contains much discussion about the horrors of drinking and driving, we want to make clear that the certified questions do not ask us to address the societal problem of drinking and driving. We are called upon only to answer the certified questions in the context of Oklahoma insurance law.

2. We note that in each of the certified questions the certifying court used the vernacular term "accident" to describe the incident in which Mr. Cranfill was killed. In this opinion we use the

word "wreck" when describing the incident in which Mr. Cranfill was killed and use the word "accident" when addressing the policy language.

3. We are asked to resolve the certified questions in the context of AD & D insurance only. Aetna paid the $50,000 basic life insurance benefit to Mrs. Cranfill and those benefits are not at issue. Only the $50,000 accidental death benefits are at issue.

any similar exclusion relating to the use of alcohol.

¶4 After Aetna denied Mrs. Cranfill's claim on the grounds that Mr. Cranfill's death was not the result of an "accident" and/or was "intentionally self-inflicted," Mrs. Cranfill sued Aetna for breach of contract. The federal district court certified two questions to us concerning Oklahoma insurance law.

¶5 Oklahoma law governing insurance coverage disputes is well-established. The foremost principle is that an insurance policy is a contract. Parties are at liberty to contract for insurance to cover such risks as they see fit and they are bound by terms of the contract. *Wiley v. Travelers Ins. Co.*, 1974 OK 147, 534 P.2d 1293, 1295. It necessarily follows that courts are not at liberty to rewrite the terms of an insurance contract. *Id.* When addressing a dispute concerning the language of an insurance policy our first step is to determine as a matter of law whether the policy language at issue is ambiguous. *Wynn v. Avemco Ins. Co.*, 1998 OK 75, ¶17, 963 P.2d 572, 575. If it is not ambiguous, we accept the language in its plain, ordinary and popular sense. *McDonald v. Schreiner*, 2001 OK 58, ¶7, 28 P.3d 574, 577. If the language is ambiguous, we apply well-settled rules of construction to determine the meaning of the ambiguous language: we construe the policy to give a reasonable effect to all of its provisions, *Wynn v. Avemco Ins. Co.*, 1998 OK 75, ¶16, 963 P.2d 572, 575, and we liberally construe words of inclusion in favor of the insured and strictly construe words of exclusion against the insurer. *McDonald v. Schreiner*, 2001 OK 58, ¶7 n. 11, 28 P.3d 574, 577 n. 11.

## I.

### ACCIDENT AND/OR INTENTIONALLY SELF–INFLICTED INJURY

¶6 The policy provides coverage for loss of life as a result of bodily injury suffered in an accident but excludes coverage for intentionally self-inflicted injuries.

¶7 Mrs. Cranfill argues the word accident is ambiguous and must be construed

against Aetna. Aetna argues the word accident is not ambiguous. Whether policy language is ambiguous is a question of law. *Wynn v. Avemco Ins. Co.*, 1998 OK 75, ¶17, 963 P.2d 572, 575. The absence of an express definition of a word within the policy does not necessarily render the word ambiguous. Similarly, the fact that a word cannot be precisely defined to make clear its application in every factual situation does not mean the word is ambiguous. *See, e.g, Allstate v. Humphrey*, 246 Md. 492, 229 A.2d 70 (1967). Rather, the test to be applied in determining whether a word is ambiguous is whether the word "is susceptible to two interpretations" on its face. *Littlefield v. State Farm Fire and Cas. Co.*, 1993 OK 102, 857 P.2d 65, 69.

¶8 This test for ambiguity is applied from the standpoint of a reasonably prudent lay person, not from that of a lawyer. Couch on Insurance 3d § 21:14 (1995). In our view the word accident is not, on its face, susceptible to two interpretations. A reasonably prudent lay person applying for accidental death insurance would understand what an accident is. Accordingly, we conclude the word accident as used in the policy is not ambiguous. Having made this determination, we must accept the word in its plain, ordinary and popular sense. *McDonald v. Schreiner*, 2001 OK 58, ¶7, 28 P.3d 574, 577.

¶9 In *Willard v. Kelley*, 1990 OK 127, 803 P.2d 1124, 1128–29, we described an accident as an event that is "unexpected, unintended and unforeseen in the eyes of the insured" and said that the standard to be used is that of a reasonable person appraising the event from the insured's perspective. Aetna, relying on this language in *Willard*, argues that since Mr. Cranfill's death was a reasonably foreseeable consequence of his driving while intoxicated, his death was not accidental.

¶10 We reject this argument. In the context of life and accident insurance, contract terms are not analyzed under the tort principle of foreseeability. Otherwise, deaths resulting from almost any high-risk driving activity would be excluded from cov-

erage under an accident insurance policy (*e.g.*, driving at an excessive speed, failing to keep a proper lookout, failing to maintain brakes in good condition, changing lanes without using a proper turn signal, floating a stop sign). If one applied tort principles, death from such high-risk activity could be said to be reasonably foreseeable.

■ ¶ 11 Foreseeability has a more specific meaning in the context of life and accident insurance. It is only when the consequences of the act are so natural and probable as to be expected by any reasonable person that the result can be said to be so foreseeable as not to be accidental. *See Mid–Continent Life Ins. Co. v. Davis,* 1935 OK 1019, 51 P.2d 319 *Syllabus by the Court* ¶ 1 ("Death of the insured is 'accidental' within policy where it is unexpected and not [the] probable result of his conduct."). The mere fact that an insured's death may have resulted from his or her own negligence, or even gross negligence, does not prevent that death from being accidental under the plain meaning of the word accident. *Id. Syllabus by the Court* ¶ 2.

¶ 12 Aetna asserts there is a split of authorities on this issue and further asserts that the majority of jurisdictions, as well as the more recent decisions, support its denial of Mrs. Cranfill's claim. As it turns out, the split is between the federal courts on one hand and state courts on the other. Aetna urges us to adopt the federal rationale that is used to resolve insurance disputes that are governed by ERISA.[4] We decline to do so for two reasons. First, federal courts are entirely free to choose the meaning that is to be given to the critical terms in contest (*i.e.,* the word "accident" and the phrase "intentionally self-inflicted injury").[5] We, in contrast, are bound by Oklahoma's common-law jurisprudence. Second, in most ERISA cases, the federal courts must affirm the denial of benefits unless the decision to deny benefits was arbitrary and capricious.[6] We are not persuaded by the federal scheme. Instead, we are persuaded by the reasoning of other state courts which have overwhelmingly held that an insured's death, in circumstances similar to the circumstances of this case, is accidental and is not intentionally

4. ERISA is the Employee Retirement Income and Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* It governs essentially all private employer-sponsored insurance "plans." As used in ERISA, the term "plan" includes "employee welfare benefit plans," 29 U.S.C. § 1002(3), which are plans "established or ... maintained by an employer for the purpose of providing ... medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, [or] death....." 29 U.S.C. § 1002(1).

This case is not governed by ERISA because ERISA has an exclusion for church insurance plans. *See* 29 U.S.C. §§ 1002(33), 1003(b)(2).

5. In *Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981), the Supreme Court articulated the appropriate use of "federal common law": "[A]bsent some congressional authorization to formulate substantive rules of decision, federal common law exists only in such narrow areas as those concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights and obligations of the United States or our relations with foreign nations, and admiralty cases." *Id.* at 641, 101 S.Ct. 2061. The Supreme Court has found congressional authorization for federal courts to develop federal common law in the Labor Management Relations Act, 29 U.S.C.

§ 301(a), and in the first two sections of the Sherman Anti–Trust Act, 15 U.S.C. §§ 1, 2. *Id.* at 642–643. The Supreme Court has also found congressional authorization for federal courts to develop interstitially federal common law for application to ERISA. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *see also Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

6. Three levels of review have developed in the federal courts. The first and most commonly used is the arbitrary and capricious standard. Federal courts must use this standard when the insurance plan document gives the plan's administrator "discretionary authority" to deny benefits. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The second level of review is *de novo,* which is used when the plan document does not give the plan's administrator discretion to deny benefits. *Id.* The third, or middle-tier, level of review is used when the reviewing court determines that the plan administrator is operating under a conflict of interest. In the United States Court of Appeals for the Tenth Circuit, the conflict is weighed "as one factor in determining whether the plan administrator's decision was arbitrary and capricious." *Pitman v. Blue Cross and Blue Shield of Oklahoma,* 217 F.3d 1291, 1295 (10th Cir.2000).

self-inflicted.[7]

¶ 13 Separate and apart from the issue of whether Mr. Cranfill's death is covered as an accidental death is whether it is excluded as an intentionally self-inflicted injury. Again, we do not view the phrase as susceptible to two interpretations on its face and therefore we conclude the phrase is not ambiguous.

·¶ 14 Aetna argues that an intentionally self-inflicted death is any death that is the natural and probable consequence of an intentional act.[8] Stated another way, Aetna's argument is that a court may infer an insured's intent to inflict his or her own death. We reject that notion. We are guided by our earlier decision in *New York Life Ins. Co. v. Riggins*, 1936 OK 528, 61 P.2d 543. In *Riggins*, the insured's surviving spouse sought insurance benefits for the death of her husband pursuant to two life insurance policies. The issue was whether the insured's chronic alcoholism was intentionally self-inflicted. We held it was not. We held that although the insured's act of consuming alcohol was intentional, his resulting brain damage from chronic alcoholism was not an intentional act

7. *See, e.g., Fryman v. Pilot Life Ins. Co.*, 704 S.W.2d 205 (Ky.1986) (state law, motorcycle accident, excessive speed, intoxicated driver killed, held wreck was an accident); *American Family Life Assurance Co. v. Bilyeu*, 921 F.2d 87 (6th Cir.1990) (applying Kentucky law, single-vehicle wreck, intoxicated driver killed, held wreck was an accident); *Consumers Life Ins. Co. v. Smith*, 86 Md.App. 570, 587 A.2d 1119 (1991) (state law, single-vehicle wreck, intoxicated driver killed, held wreck was an accident and driver's death was not intentionally self-inflicted); *Schwartz v. John Hancock Mutual Life Ins. Co.*, 96 N.J.Super. 520, 233 A.2d 416 (Law Div.1967); *aff'd* 99 N.J.Super. 223, 239 A.2d 248 (Appellate Div. 1968) (state law, 18–year–old killed in single-vehicle wreck while speeding in attempt to elude police, held wreck was an accident, death was not an intentionally self-inflicted); *Harrell v. Minnesota Mutual Life Ins. Co.*, 937 S.W.2d 809 (Tenn.1996) (state law, multi-vehicle wreck, intoxicated driver killed, Tennessee joined majority of jurisdictions and abandoned the distinction between "accidental means" and "accidental results," held wreck was an accident); *Freeman v. Crown Life Ins. Co.*, 580 S.W.2d 897 (Tex.Civ. App.1979) (state law, intoxicated driver hit parked tractor/truck, held wreck was an accident); *see also, LDS Hospital v. Capitol Life Ins. Co.*, 765 P.2d 857 (Utah 1988) (state law, head-on collision, intoxicated driver seriously injured, held driver's injuries did not "arise out of an attempt at assault or felony").

The cases from other jurisdictions relied upon by Aetna for this proposition are unpersuasive. The only non-ERISA case among the group is distinguishable because it deals with an entirely unrelated exclusion for "loss caused directly or indirectly, wholly or partly, by: . . . committing or attempting to commit a crime." *Barnes v. Greater Georgia Life Ins. Co.*, 243 Ga.App. 149, 530 S.E.2d 748 (2000). Another case applied Georgia's "continued allegiance" to the "metaphysical distinction" between "accidental means" and "accidental results" in affirming the denial of benefits. *See Buce v. Allianz Life Ins. Co.*, 247 F.3d 1133 (11th Cir.2001). The other cases are distinguishable in that they are governed by ERISA and federal substantive law under varying standards of review.

Aetna also relies on *Provident Life & Acc. Ins. Co. v. Green*, 1935 OK 695, 46 P.2d 372, 375; *United States Fidelity & Guaranty Co. v. Briscoe*, 1951 OK 386, 239 P.2d 754, 756–57; and *New York Life Ins. Co. v. Wise*, 1952 OK 417, 251 P.2d 1058, 1060–61, for the general proposition that an accident is something that "is not the natural and or probable consequence of the means which produced it." We view this proposition and these cases as supportive of coverage in this case. In *Green* the insured railroad worker died of sunstroke while replacing railroad ties on a hot July afternoon. We held his death was an accident. In *Briscoe* a road contractor used 9600 tons of dry, powdery cement for four months while building a highway in Yukon, Oklahoma. Neighbors who lived "about 35 steps" from the cement plant were injured by inhalation of the cement dust. We held their injuries were not accidental. In *Wise* an intoxicated young man jumped out of an apartment window to evade the police and was killed. We held his death was an accident.

8. Aetna relies on the following federal cases for this proposition: *Morton v. Smith*, 91 F.3d 867, 872 (7th Cir.1996); *Bevans v. Iron Workers' Tri–State Welfare Plan*, 971 F.Supp. 357, 361 (C.D.Ill. 1997); and *Holsinger v. New England Mut. Life Ins. Co.*, 765 F.Supp. 1279, 1282 (E.D.Mich. 1991). *Morton* is an ERISA case in which the Seventh Circuit reviewed the insurer's denial of plaintiff's claim under an abuse of discretion standard and held that, even though it might have reached the opposite result on its own, it could not say the insurer's denial of the claim was an abuse of discretion. *Bevans* is also an ERISA case, decided by a trial court. Although the trial court reviewed the insurer's denial of plaintiff's claim under a *de novo* standard, it granted summary judgment to the insurer based on federal common law, not Illinois law. Finally, *Holsinger* is an ERISA case decided by a trial court. Again, the trial court granted summary judgment to the insurer based on federal common law, not state law.

of self-destruction. We held that the exclusion for intentionally self-inflicted injury applies only when then insured intended self-destruction, not when the insured "intentionally committed an act which unexpectedly results in death." *Id.* at 552.

¶ 15 Similarly in the instant case, we conclude that Mr. Cranfill's conduct of intentionally driving while intoxicated is not the equivalent of his intent or plan to cause his death.[9] A death is not intentionally self-inflicted for purposes of an accidental death policy merely because it resulted from engaging in negligent or even grossly negligent conduct, unless the insured intended to cause his own death. *See Mid–Continent Life Ins. Co. v. Davis,* 1935 OK 1019, 51 P.2d 319 *Syllabus by the Court* ¶ 2. To hold otherwise would be contrary to the expectations of Oklahoma insureds who have purchased accidental death insurance to protect their beneficiaries.

¶ 16 In sum, we answer the first certified question as follows. Under Oklahoma law, for purposes of an accidental death and dismemberment insurance policy, an insured's death is "accidental" and is not an "intentionally self-inflicted injury" in the context of the certified question.

## II.

### *PUBLIC POLICY*

¶ 17 The second certified question concerns Oklahoma's public policy. Aetna suggests Oklahoma's public policy against driving while drinking necessarily implies a public policy against awarding accident insurance benefits for the death of an intoxicated driver in a single-vehicle wreck. Mrs. Cranfill suggests Oklahoma public policy favors the innocent beneficiary in this context.

¶ 18 Oklahoma undoubtedly has a longstanding and strong public policy against driving while drinking. *See, e.g.* 47 O.S. 2001 § 761 (unlawful to operate motor vehicle while impaired by consumption of alcohol); 47 O.S.2001 § 11–902 (unlawful to operate motor vehicle while under the in-

fluence of alcohol). We do not believe, however, that denying accidental death benefits to Mrs. Cranfill in this context fosters the public policy against driving while drinking. Further, we find nothing in the Oklahoma statutes or case law relative to accident insurance that indicates the existence of an Oklahoma public policy favoring the denial of benefits to an innocent beneficiary.

¶ 19 In sum, we answer no to the second certified question. Under Oklahoma law, for purposes of an accidental death and dismemberment insurance policy, Oklahoma public policy does not prohibit the insured's beneficiary from recovering accidental death benefits in the context of the certified question.

## III.

### *CONCLUSION*

¶ 20 In response to the first certified question, we answer that the death of an insured, as described within the question, is an accidental death and is not an intentionally self-inflicted injury. In response to the second certified question, we answer that Oklahoma public policy does not prohibit an insured's beneficiary from recovering accidental death benefits in the context described within the question.

**CERTIFIED QUESTIONS ANSWERED**

All Justices Concur.

---

9. In fact, Mr. Cranfill apparently attempted to avoid injury to himself. As noted in the accident report, he "overcorrected" to the left after the pickup ran off the right side of the road.