2011 OK CIV APP 96

**CERTAIN UNDERWRITERS AT LLOYDS LONDON, a Foreign Insurer, Plaintiff/Appellee,**

v.

**B3, INC. and NRS Consulting Engineers, Defendants/Appellants,**

and

**The Mill Creek Public Works Authority; John D. Sikes and Tamara J. Sikes, Husband and Wife; Connie Sikes, Individually and as Personal Representative of The Estate of Johnny F. Sikes; William Brunk and Kathryn Brunk, Husband and Wife; Phil Converse; Ava Converse; Paula Rush; The Janice Earlene Family Revocable Trust; Shannon Shirley and Reginald Robbins, Husband and Wife, Defendants.**

**No. 108,268.**

Court of Civil Appeals of Oklahoma, Division No. 1.

July 21, 2011.

---

Robert W. Hayden, Speck & Hayden, Oklahoma City, Oklahoma, and S. Brent Bahner, Fischl, Culp, McMillin, Chaffin, Bahner & Long, LLP, Ardmore, Oklahoma, for Plaintiff/Appellee.

Gary L. Richardson, David R. Keesling, Heidi L. Shadid, Richardson Richardson Boudreaux, Tulsa, Oklahoma, for Defendant/Appellant, NRS Consulting Engineers.

WM. C. HETHERINGTON, JR., Presiding Judge.

¶1 Defendants/Appellants B3, Inc. (B3) and NRS Consulting Engineers (NRS) appeal entry of an order sustaining a Motion for Summary Judgment in favor of Plaintiff/Appellee Certain Underwriters at Lloyds London (Lloyds) in Lloyd's suit for a declaratory judgment. The trial court's finding the Total Pollution exclusion in an insurance policy issued by Lloyds applied to bar coverage for liability and damages claimed in a lawsuit against NRS, B3, and Defendant The Mill Creek Public Works Authority and Lloyd's was entitled to judgment as a matter of law is **AFFIRMED**.

### Standard of Review

¶2 ¶13 Declaratory judgment actions are reviewed "in the same manner as other judgments." 12 O.S.2001 § 1654. The trial court's legal rulings are reviewed under a *de novo* standard, under which the appellate court has plenary, independent, and non-deferential authority to reexamine those rul-

ings. *Neil Acquisition, L.L.C. v. Wingrod Investment Corp.,* 1996 OK 125, n. 1, 932 P.2d 1100, 1103. In addressing Appellants' claim that summary adjudication was inappropriate, we must examine the pleadings, depositions, affidavits and other evidentiary materials submitted by the parties and affirm if there is no genuine issue as to any material fact and Defendants were entitled to judgment as a matter of law. *Perry v. Green,* 1970 OK 70, 468 P.2d 483. An order granting summary relief disposes of legal issues, and therefore the review we conduct on appeal is *de novo. Brown v. Nicholson,* 1997 OK 32, 935 P.2d 319; *Manley v. Brown,* 1999 OK 79, 989 P.2d 448.

### Facts

¶ 3 The Town of Mill Creek (Mill Creek) hired NRS to design and plan improvements to its wastewater treatment plant, and B3 was hired to make the improvements according the NRS's specifications. B3's contract provided it would indemnify NRS and Mill Creek for claims arising from B3's work on the improvements. In order to perform the work, wastewater from lagoons was discharged into Skeleton Creek.

¶ 4 NRS, B3 and The Mill Creek Public Works Authority were sued in the District Court of Johnston County, Oklahoma in Case No. CJ–08–10 by Plaintiffs John Sikes, Tamara J. Sikes, The Estate of Johnny Sikes, Connie Sikes, William Brunk, Kathryn Brunk, Phil Converse, Ava Converse, Paula Rush, The Janice Earlene Converse Family Revocable Trust, Shannon Shirley and Reginald Robbins (collectively, Landowners[1]). Landowners raise several theories of recovery for their alleged damages arising from the pollution of their lands and their water sources due to the disposal of raw or improperly treated sewage in nearby creeks beginning in late 2006.[2]

¶ 5 Lloyds sought a declaratory judgment determining it had no liability under Commercial General Liability Policy B3 LLG035602 (the policy) issued to its insured B3 due to a pollution exclusion clause and moved for summary judgment in its favor.

¶ 6 The policy, in the Total Pollution Exclusion Endorsement, Section I(2)(f), provides, in pertinent part, that no insurance is available for:

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants."

¶ 7 The policy defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." NRS moved for summary judgment in its favor, arguing it was entitled to indemnity and coverage as an intended third-party beneficiary under the policy. NRS argued treated wastewater was not included in the definition of "pollutants" under the policy and therefore it was not an excluded risk.

¶ 8 The trial court concluded the claimed losses in the underlying lawsuit were pollution within the meaning of the policy, there was no coverage under the policy for either the claimed direct losses or indemnity losses, entered judgment in favor of Lloyds on its motion for summary judgment, and denied NRS's motion judgment. B3 and NRS appeal.

### Analysis

¶ 9 When addressing a dispute concerning an insurance policy language, the court must first determine as a matter of law

---

1. This designation is used for simplicity of reference. The plaintiff group includes those suing as individuals, those who act in a trustee capacity, and a trust.

2. There appears to be other litigation in Case No. CJ–2008–192 in the District Court of Johnston County, Oklahoma over claimed permits for the disposal.

whether the policy language at issue is ambiguous. *Wynn v. Avemco Ins. Co.*, 1998 OK 75, ¶ 17, 963 P.2d 572, 575. Policy language is ambiguous if it is reasonably susceptible to more than one meaning on its face, and the policy will be construed in favor of the insured. *Littlefield v. State Farm Fire and Casualty Company*, 1993 OK 102, ¶ 7, 857 P.2d 65, 69. "The rule that policies are to be construed against the insurer has no application where the provisions are susceptible of only one reasonable construction." *Wynn v. Avemco Insurance Co.*, 1998 OK 75, ¶ 17, 963 P.2d at 575. "However, neither forced nor strained construction will be indulged, nor will any provision be taken out of context and narrowly focused upon to create and then construe an ambiguity so as to import a favorable consideration to either party than that expressed in the contract." If an insurance contract contains no ambiguity, the court must construe its language in accordance with the plain, ordinary meaning of its terms. *Haworth v. Jantzen*, 2006 OK 35, ¶ 17, 172 P.3d 193, 197.

¶ 10 The issue of ambiguity in insurance policies is addressed in *Cranfill v. Aetna Life Ins. Co.*, 2002 OK 26, ¶ 7–¶ 8, 49 P.3d 703, 706, in which the Court advises how:

> The absence of an express definition of a word within the policy does not necessarily render the word ambiguous. Similarly, the fact that a word cannot be precisely defined to make clear its application in every factual situation does not mean the word is ambiguous. *See, e.g., Allstate v. Humphrey*, 246 Md. 492, 229 A.2d 70 (1967). Rather, the test to be applied in determining whether a word is ambiguous is whether the word 'is susceptible to two interpretations' on its face. *Littlefield v. State Farm Fire and Cas. Co.*, 1993 OK 102, 857 P.2d 65, 69. This test for ambiguity is applied from the standpoint of a reasonably prudent lay person, not from that of a lawyer. Couch on Insurance 3d § 21:14 (1995).

¶ 11 Appellants cite the exclusion of sewage from the definition of "solid waste" found in Title 40 of the Code of Federal Regulations promulgated pursuant to the Clean Water Act, 33 U.S.C. § 1251, *et seq.*, and argue the policy is ambiguous and sewage is not included within the pollution exclusion. Although informative, this definition is not determinative, especially given how Landowners' petition explicitly states, "Plaintiffs do not assert a claim under the Clean Water Act." Section V, Definitions, (15) of the policy defines the term "pollutants" as including waste and contaminants. The policy does not separately define the terms waste or contaminants. However, the definition of "pollutant," taken in a plain and ordinary manner, does not limit waste to "solid waste."

¶ 12 Landowners' petition claims their water and land were contaminated by components of sewage including "feces, urine, vomit, other bodily fluids and excretions, rancid food particles, discarded or excreted pharmaceuticals, dead animals, inorganic chemicals, bacteria (including E. Coli), viruses, prions, parasitic worms and other parasites (including Cryptosporidium and Giardia lamblia), heavy metals, and any other thing that a person can flush down a toilet." The Oklahoma Administrative Code, at OAC 252:645–1–2, defines "sewage" as "wastewater that generally originates as human waste from certain activities including using toilet facilities, washing, bathing, preparing foods and washing laundry." [3]

¶ 13 The trial court states the problem with the analysis of the term "pollutant" posed by NRS and B3:

> The evidence is clear that a portion of the water pumped from the sewage lagoon by Defendant B3 contained fecal matter, suspended solids, coliform bacteria and other pollutants. This Court would have to stand the definition of pollution on its head to not find that the insurance policy is clear on its face, unambiguous and excludes coverage for pollution.

■ ¶ 14 Landowners' underlying lawsuit is premised upon damages allegedly sustained due to the polluting nature of the

---

**3.** 16 Ok Reg. 1895, eff. 6–11–99; Amended at 18 Ok Reg 1616, eff. 6–1–01; Amended at 19 Ok Reg. 45, eff. 8–17–01 (emergency); Amended at 19 Ok Reg. 1027, eff. 6–1–02; Amended at 21 Ok Reg. 1618, eff. 6–11–04; Amended at 25 Ok Reg 2318, eff. 7–11–08.

wastewater containing human waste and other raw or improperly treated wastes and contaminants released or discharged within the plain and ordinary meaning of those terms. An ambiguity is created only by adopting the strained construction proposed by NRS and B3. "An insured cannot insist upon a strained construction of relevant policy language in order to claim a patent ambiguity exists nor can it contradict the written instrument's plain terms under the guise of latent ambiguity." *Bituminous Casualty Corp. v. Cowen Construction, Inc.,* 2002 OK 34, ¶ 12, 55 P.3d 1030, 1034; *see also Kerr–McGee Corporation v. Admiral Insurance Company,* 1995 OK 102, 905 P.2d 760.

### Conclusion

¶ 15 Lloyd's policy is not ambiguous on its face in excluding coverage for the risks stated in Landowners' underlying lawsuit for damages allegedly caused by the releases or discharges from the lagoons in the course of the work performed by B3 according to NRS's plans and specifications. Having determined there is no coverage under the policy, we need not address whether NRS was a third-party beneficiary of a third party contract, *i.e.,* entitled to indemnification under coverage afforded B3. The trial court's order finding the pollution exclusion applies to exclude coverage and Lloyd's was entitled to judgment as a matter of law is **AFFIRMED.**

BELL, C.J., and HANSEN, J., concur.