CROWN ENERGY COMPANY v. MID-CONTINENT CASUALTY CO.
2022 OK 60
Case Number: 116989
Decided: 06/14/2022
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 60, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

CROWN ENERGY COMPANY, Plaintiff/Appellee,
v.
MID-CONTINENT CASUALTY CO., Defendant/Appellant.

ON CERTIORARI TO THE COURT OF CIVIL APPEALS, DIVISION II

Honorable Aletia Haynes Timmons, District Judge

¶0 Crown Energy Company ("Crown") brought suit against Mid-Continent Casualty Company ("Mid-Continent") seeking declaratory judgment that two commercial general liability policies issued to Crown provided coverage for claims of property damage brought against Crown in a separate action. The claims arose out of seismic activity allegedly caused by Crown's use of waste water disposal wells in its oil and gas operations. Mid-Continent filed a counterclaim, seeking declaratory judgment that the claims were not covered under the policies because the seismic activity did not constitute an "occurrence" and that the claims fell within a pollution exclusion to the policies. The trial court granted summary judgment in favor of Crown. Mid-Continent appealed, and the matter was assigned to the Court of Civil Appeals, Division II. The Court of Civil Appeals affirmed the trial court's judgment. We hold that the seismic activity did constitute an occurrence under the policies and that the pollution exclusion does not bar coverage.

CERTIORARI PREVIOUSLY GRANTED;
COURT OF CIVIL APPEALS OPINION VACATED;
JUDGMENT OF THE TRIAL COURT AFFIRMED.

A. Michele Campney, Cheek & Falcone, PLLC, Oklahoma City, Oklahoma, and Kris Ted Ledford, Ledford Law Firm, Owasso, Oklahoma, for Plaintiff/Appellee.

Christopher W. Martin, Martin, Disiere, Jefferson & Wisdom, L.L.P., Houston Texas, and Robert P. Fitz-Patrick, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, Oklahoma, for Defendant/Appellant.

ROWE, J.:

I. BACKGROUND

¶1 Appellee, Crown Energy Company ("Crown"), is an Oklahoma City-based oil and gas producer operating in the Payne County formations. In the course of its oil and gas operations, Crown produces a large volume of waste water, which it stores in underground disposal wells.

¶2 In 2015, Crown sought commercial general liability insurance from Appellant, Mid-Continent Casualty Company ("Mid-Continent"). As part of its application, Crown included specific information about the nature of Crown's oil and gas operations. Mid-Continent ultimately issued two commercial general liability policies to Crown, Policy Number 04-GL-943967 and Policy Number 04-GL-963176, which covered two consecutive one-year periods from October 2015 to November 2017 ("the Policies"). Section I of the Policies provides:

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. [...]

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured [...] knew that the "bodily injury" or "property damage" had occurred, in whole or in part. [...]

Each of the Policies contains a modified Pollution Exclusion in an Oil and Gas Endorsement, which replaces the standard pollution exclusion and states that the insurance does not apply to:

Pollution

To "Bodily Injury" or "Property Damage" arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon the land, the atmosphere or any water course or body of water; but this exclusion does not apply to a "Pollution Incident".

 

¶3 In December 2016, Crown was one of several oil and gas companies named as defendants in a class action suit filed by a group of Payne County residents (the "Reid Lawsuit").

 

¶4 Crown sought declaratory relief against Mid-Continent in the District Court of Oklahoma County, alleging the claims in the Reid Lawsuit are covered under the Policies. Mid-Continent denied the allegations and filed a counterclaim seeking declaratory judgment that the Policies did not cover the claims in the Reid Lawsuit. In April 2018, the District Court granted Crown's motion for summary judgment in part, finding that Mid-Continent had a duty to defend Crown in the Reid Lawsuit.

¶5 Mid-Continent's appeal of the trial court's order granting Crown's motion for summary judgment was assigned to the Court of Civil Appeals, Division II ("COCA"). COCA issued a published opinion on September 24, 2020, affirming the trial court's order. With respect to the Pollution Exclusion, COCA observed that the seismic activity which prompted the Reid Lawsuit was caused by injection of waste water into the disposal wells at high pressure. Having determined that the pressure generated by the waste water injections was the cause of the seismic activity, COCA found that the Pollution Exclusion did not apply to Crown's activities because it did not include any reference to injection of pollutants into the land "under pressure." In October 2020, Mid-Continent filed a Petition for Rehearing claiming that COCA's emphasis on the pressure at which the waste water was injected amounted to a "new and independent theory of causation" that undermined the effect of the Pollution Exclusion. COCA denied Mid-Continent's Petition for Rehearing.

¶6 Mid-Continent filed its Petition for Certiorari, claiming COCA erred by placing too great an emphasis on the pressure issue in finding that the Pollution Exclusion did not apply. Mid-Continent also claimed that COCA erred in finding that Crown's wastewater disposal activities constituted an "occurrence" under the Policy. We granted certiorari on September 27, 2021.

II. STANDARD OF REVIEW

¶7 We review a trial court's order granting summary judgment de novo. Tiger v. Verdigris Valley Elec. Coop., 2016 OK 74410 P.3d 1007Dodson v. St. Paul Ins. Co., 1991 OK 24812 P.2d 372Benedetti v. Cimarex Energy Co., 2018 OK 21415 P.3d 43

III. DISCUSSION

¶8 Mid-Continent alleges that COCA erred on two counts in affirming the trial court's order granting summary judgment. First, Mid-Continent claims COCA erred in finding that Crown's wastewater disposal efforts constituted an "occurrence" under the Policies. Second, Mid-Continent claims that COCA erred in finding that the Pollution Exclusion did not bar coverage for the claims in the Reid Lawsuit.

¶9 Parties are free to contract for insurance that covers whatever risks they see fit, and they will be bound by the terms of the contract. Porter v. Oklahoma Farm Bureau Mut. Ins. Co., 2014 OK 50330 P.3d 511Cranfill v. Aetna Life Ins. Co., 2002 OK 2649 P.3d 703Id. Our primary objective when interpreting a contract is to effectuate the intent of the parties as expressed in the terms of the contract. Walker v. BuildDirect.com Techs. Inc., 2015 OK 30349 P.3d 549Dodson v. St. Paul Ins. Co., 1991 OK 24812 P.2d 372

A. The property damage which prompted the Reid Lawsuit was caused by an "occurrence."

¶10 Mid-Continent's first assignment of  error is based on the Policies' definition of an "occurrence." Subsection 1(b) under Coverages in the Policies states that the insurance only applies if the damage at issue is, among other things, caused by an "occurrence." According to the Policies, an "occurrence" refers to:

[A]n accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Mid-Continent claims that because Crown was intentionally injecting waste water into the disposal well, its activities could not constitute an accident, and therefore, coverage for the claims in the Reid Lawsuit does not lie.

¶11 In support of its position, Mid-Continent cites to Cranfill v. Aetna Life Ins. Co., 2002 OK 2649 P.3d 703Cranfill, we answered two certified questions relating to whether an insured's beneficiary was entitled to accidental death benefits when the insured intentionally consumed alcohol beyond the legal limit to operate a vehicle and subsequently died in a single-vehicle car wreck.Id. ¶ 9, 49 P.3d at 706. We rejected that argument, explaining that the principle of reasonable foreseeability, which is applicable in torts, does not apply when analyzing the terms of an insurance contract. Id. ¶ 10, 49 P.3d at 706-07. We went on to explain how foreseeability should factor into determining whether an accident occurs:

Foreseeability has a more specific meaning in the context of life and accident insurance. It is only when the consequences of the act are so natural and probable as to be expected by any reasonable person that the result can be said to be so foreseeable as not to be accidental. The mere fact that an insured's death may have resulted from his or her own negligence, or even gross negligence, does not prevent that death from being accidental under the plain meaning of the word accident.

(Internal citations omitted).

¶12 Relying on Cranfill, Mid-Continent claims that the seismic activity that prompted the Reid Lawsuit was such a natural and probable consequence of Crown's waste water disposal activities that it could not be deemed an accident. We disagree. Mid-Continent offers little to no evidence in support of its position, instead relying on allegations made by the plaintiffs in the Reid Lawsuit.some risk of seismic activity associated with Crown's waste water disposal activities does not mean that seismic activity is such a natural and probable consequence of those activities that it should be expected.

B. The Pollution Exclusion does not bar coverage for the claims in the Reid Lawsuit.

¶13 Mid-Continent maintains that, even if the earthquakes at issue did constitute an occurrence, the claims in the Reid Lawsuit are barred from coverage based on the Pollution Exclusion. The primary text of the Pollution Exclusion states that the insurance afforded by the Policies does not apply:

To "Bodily Injury" or "Property Damage" arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon the land, the atmosphere or any water course or body of water; but this exclusion does not apply to a "Pollution Incident".

 

Relying on the breadth of the "arising out of language," Mid-Continent insists that the Pollution Exclusion clearly and unambiguously precludes coverage for the Reid Lawsuit because the claims "[arose] out of the discharge ... of ... toxic liquids ... waste materials ... contaminants or pollutants into or upon the land."See discussion of Bituminous Cas. Corp. v. Cowen Constr., Inc., 2002 OK 3455 P.3d 1030infra ¶¶ 23-24.

 

¶14 Crown asserts that the Pollution Exclusion is ambiguous as to whether it applies to the claims in the Reid Lawsuit, and asks that we apply the reasonable expectations doctrine to find that there is coverage under the Policies. According to the reasonable expectations doctrine, where an ambiguity in an insurance contract exists, it should be resolved in accordance with the reasonable expectations of the parties. Max True Plastering Co. v. U.S. Fid. & Guar. Co., 1996 OK 28912 P.2d 861Broom v. Wilson Paving & Excavating, Inc., 2015 OK 19356 P.3d 617Max True Plastering Co., 1996 OK 28Id. ¶ 31, 356 P.3d at 628-29. We will not permit ambiguous clauses to defeat coverage that was reasonably expected by the insured. Id. We construe ambiguities against the insurer and in favor of the insured. Id.

¶15 Crown further asserts that the Pollution Exclusion is ambiguous, at least insofar as to whether it applies to claims arising out of seismic activity. Crown notes that the property damage that formed the basis of the Reid Lawsuit was not caused by the polluting nature of the waste water it was producing. Rather, the damage was the result of pressure and displacement caused by the injection of the waste water into underground disposal wells. Crown's position is that the Pollution Exclusion is ambiguous as to whether it bars coverage for property damage claims when the damage is not caused by the polluting nature of an otherwise toxic or polluting substance. To illustrate its position on the alleged ambiguity, Crown references Pipefitters Welfare Educational Fund v. Westchester Fire Insurance Company, 976 F.2d 1037, 1043 (7th Cir. 1992), which contains this seminal analysis:

The terms 'irritant' or 'contaminant,' when viewed in isolation are virtually boundless, for 'there is virtually no substance or chemical in existence that would not irritate or damage some person or property.' Without some limiting principle, the pollution exclusion clause would extend far beyond its intended scope, and lead to some absurd results. To take but two simple examples, reading the clause broadly would bar coverage for bodily injuries suffered by one who slips and falls on the spilled contents of a bottle of Drano, and for bodily injury caused by an allergic reaction to chlorine in a public pool. Although Drano and chlorine are both irritants or contaminants that cause, under certain conditions, bodily injury or property damage, one would not ordinarily characterize these events as pollution.

(internal citations omitted).

¶16 We addressed a substantially similar pollution exclusion in National American Insurance Company v. New Dominion, LLC, 2021 OK 62499 P.3d 9New Dominion, an oil and gas company, was sued in a series of separate lawsuits alleging that its oil and gas operations resulted in seismic activity that caused bodily injury to the plaintiffs and damaged their property. Id. ¶ 14, 499 P.3d at 14. The insured sought defense and indemnity from the insurance company, but the insurance company denied the claims, citing a pollution exclusion,Id. On appeal, the insured argued that the pollution exclusion was ambiguous and that we should apply the reasonable expectations doctrine. Id. ¶ 24, 499 P.3d at 16. We summarized the alleged ambiguity in the exclusion as follows:

New Dominion contends that the ambiguity in the Total Pollution Exclusion stems from the phrase "irritant or contaminant" in the definition of pollutants. New Dominion claims that this language led it to reasonably believe that the exclusion would only apply when the bodily injury or property damage for which coverage is sought arises out of the irritating or contaminating nature of the pollutant. New Dominion contends it did not contemplate that the exclusion would apply in instances where an irritating or contaminating substance, in this case wastewater, caused bodily injury or property damage that was not the result of the wastewater's irritating or contaminating nature.

Id. ¶ 26, 499 P.3d at 16. We found that the pollution exclusion was ambiguous as to whether the waste water in question constituted an irritant or contaminant and that the insured had a reasonable expectation of coverage under the policy.Id. ¶ 30, 499 P.3d at 17. In doing so, we offered the following on the use of pollution exclusions to deny coverage for claims arising out of seismic activity:

What the foregoing analysis shows is that the Total Pollution Exclusions were never meant to apply to earthquake-related incidents. They were designed to preclude coverage for a different class of catastrophic occurrences, namely pollution events. NAICO's attempt to shoehorn the earthquake claims that prompted this litigation into the class of events to which the Total Pollution Exclusion logically applies promotes an illogical conclusion. Moreover, this Court will not endorse an absurdly expansive reading of the Total Pollution Exclusions and, in so doing, legitimize a fairly transparent attempt by NAICO to further limit its exposure by invoking inapplicable exclusions to deny coverage.

Id. ¶ 33, 499 P.3d at 18.

¶17 In response to New Dominion, Mid-Continent claims that the Pollution Exclusion in this matter is distinguishable. First, Mid-Continent contends that the Pollution Exclusion here is broader in scope because it uses the "arising out of" language. Second, Mid-Continent notes the Pollution Exclusion does not rely on a separate definition of pollutants, instead incorporating a range of substances that constitute irritants, contaminants, or pollutants into the exclusion itself. Third, Mid-Continent claims that the Pollution Exclusion is different in that it is contained within a special Oil and Gas Endorsement that applies to particular aspects of Crown's oil and gas operations, making it an "operational exclusion." Crown asks this Court to apply the same reasoning that it did in New Dominion to find that Mid-Continent is seeking to invoke an inapplicable exclusion to deny coverage.

¶18 Given the number of similarities between this matter and New Dominion--including the nature of the claims in the underlying lawsuit, the respective pollution exclusions, the alleged ambiguity in the exclusions, and the arguments asserted by the parties--the operative question in this appeal becomes whether any terms unique to this Pollution Exclusion expand its scope to such an extent that it would preclude coverage for the underlying claims.

¶19 Mid-Continent fails to explain how the inclusion of the "arising out of" language so drastically expands the scope of the Pollution Exclusion that it bars coverage for the Reid Lawsuit claims. Although the "arising out of" language may arguably expand the scope of the exclusion, it fails to resolve the underlying ambiguity--whether the Pollution Exclusion applies in instances where the damage at issue is not attributable to the waste water's toxic or polluting nature. Even if we were to interpret the "arising out of" language in the light most favorable to Mid-Continent, affording it the broadest possible meaning, it still fails to clarify whether the Pollution Exclusion should apply in those instances. Accordingly, we cannot find that the "arising out of" language in the Pollution Exclusion serves to bar coverage.

¶20 Mid-Continent also notes that, unlike in New Dominion, the Pollution Exclusion here does not rely on a separate definition of "pollutants." However, Mid-Continent fails to explain what significance, if any, we should ascribe to this fact. For reference, the pollution exclusion in New Dominion barred coverage for bodily injury and property damage caused by "pollutants." New Dominion, 2021 OK 62irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." Id. (emphasis added). In comparison, though not separately defining a pollutant, the Pollution Exclusion here states that the insurance provided by the Policies does not apply to bodily injury or property damage caused by "smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon the land ...." (emphasis added). The similarity of these terms is undeniable. The most significant distinction, as noted by Mid-Continent, is that the latter is incorporated into the Pollution Exclusion itself. Otherwise they both contain nearly identical lists of classes of substances, all of which fall within the general categories of irritants, contaminants, or pollutants. We see no reason why the incorporation of this definition into the exclusion itself resolves the alleged ambiguity.

¶21 Mid-Continent further claims that the Oil and Gas Endorsement, in which the Pollution Exclusion is contained, constitutes an "operational exclusion" with much broader effect than a typical pollution exclusion. Mid-Continent's position appears to be that since some of Crown's operational activities--such as disposing of waste water in underground wells--could fall within the scope of the Pollution Exclusion, that the Endorsement is directed at Crown's operations generally rather than pollution that arises out of those operations. Even if the Oil and Gas Endorsement is directed at Crown's operations, the text of the exclusion contained therein must still specifically preclude coverage. It does not.

¶22 Mid-Continent's two remaining arguments are likewise unpersuasive. First, Mid-Continent claims that the waste water at issue here unquestionably qualified as an irritant, contaminant, or pollutant. Mid-Continent is correct that the waste water that was being disposed of constitutes a "deleterious substance" and had the potential to cause bodily injury or property damage by virtue of its polluting nature. However, the property damage that prompted the Reid Lawsuit was not caused by the waste water's polluting nature and thus would not fall within the scope of the Pollution Exclusion.

 

¶23 Second, Mid-Continent notes that we have found pollution exclusions unambiguous in the past and asks us to find the same here. The fact that pollution exclusions have been held to be unambiguous in other settings does not mean that the Pollution Exclusion here is unambiguous as applied. Mid-Continent identifies Bituminous Casualty Corp. v. Cowen Construction, Inc., 2002 OK 3455 P.3d 1030Bituminous, the insurer brought an action in federal court seeking declaratory judgment that a pollution exclusion similar to the one at issue here precluded coverage for bodily injury claims asserted by several patients at a kidney dialysis center who suffered lead poisoning due to negligent construction by the defendant. Id. ¶¶ 3-6, 55 P.3d at 1032-33. The federal court certified a number of questions to this Court, including whether the scope of the pollution exclusion was limited to environmental pollution in the traditional sense. Id. ¶ 1, 55 P.3d at 1031-32. We answered that question in the negative, and in doing so, determined that the pollution exclusion was clear and unambiguous. Id. ¶¶ 13-14, 55 P.3d at 1034-35.

 

¶24 In New Dominion we found Bituminous distinguishable because it did not address the same alleged ambiguity. New Dominion, 2021 OK 62Bituminous does not require that pollution exclusions uniformly apply in every circumstance where damage is caused by a "pollutant."

¶25 Based on the foregoing, we find that the Pollution Exclusion is ambiguous, at least as to whether it applies to the claims in the Reid Lawsuit. Because we construe ambiguous provisions in an insurance contract in favor of the insured, we find that Crown could have reasonably expected coverage under the Policies.

IV. CONCLUSION

¶26 We find that the property damage that prompted the Reid Lawsuit was caused by an "occurrence," as that term is used in the Policies. Additionally, we find that the Pollution Exclusion does not clearly and unambiguously preclude coverage for the claims in the Reid Lawsuit. COCA's opinion is hereby vacated. The judgment of the trial court is affirmed.

CERTIORARI PREVIOUSLY GRANTED;
COURT OF CIVIL APPEALS OPINION VACATED;
JUDGMENT OF THE TRIAL COURT AFFIRMED.

Darby, C.J., Kauger, Winchester, Edmondson, Combs, Gurich, Rowe, and Kuehn, JJ., concur.

Kane, V.C.J., not participating.

FOOTNOTES

[T]he sudden and accidental emission, discharge, release or escape of pollutants into or upon the land, atmosphere or any water course or body of water, provided that such emission, discharge, release or escape emanates from operations conducted on land and results in "Bodily Injury" or "Property Damage". The entirety of any such emission, discharge, release or escape shall be deemed to be one "Pollution Incident".

A "Pollution Incident" does not include any of the following:

(1) "Property Damage" to or emanating from a "Waste Facility".
(2) "Bodily Injury" or "Property Damage" arising out of ownership of, or work or operations performed on any oil and gas lease in oceans, gulfs or bays.
(3) "Bodily Injury" or "Property Damage" arising out of a "Pollution Incident" which results from or is attributable to a failure to comply with any applicable statute, regulation, ordinance, directive or order relating to the protection of the environment and promulgated by any governmental body, provided that failure to comply is a willful or deliberate act or omission.
(4) Any fine or penalty imposed by any governmental or regulatory body.
(5) "Property Damage" to any property used or occupied to conduct operations at a lease site.

A "Waste Facility" refers to:

[A]ny site to which waste is legally consigned for delivery or delivered for storage, disposal, processing or treatment, provided that such site is licensed by state or federal authority to perform such storage, disposal, processing or treatment. Salt water disposal or injection wells are not considered to be "Waste Facilities".

See David & Myra Reid et al. v. White Star Petroleum, LLC et al., No. CJ-2016-543 (Dist. Ct. Payne Cty. Filed Dec. 5, 2016).

Cranfill:

A. Under Oklahoma law, for purposes of an accidental death and dismemberment insurance policy, is an insured's death "accidental" or is it an "intentionally self-inflicted injury" when the insured intentionally consumes alcohol to a blood alcohol level more than two and one-half times the legal limit for operating a motor vehicle and then dies in a single-vehicle accident caused by the act of drinking and driving?

B. For purposes of coverage under an accidental death and dismemberment insurance policy, does Oklahoma public policy prohibit an insured or the insured's beneficiary from recovering accidental death benefits when the insured intentionally consumes alcohol to a blood alcohol level more than two and one-half times the legal limit for operating a motor vehicle and then dies in a single-vehicle accident caused by the act of drinking and driving?

Cranfill v. Aetna Life Ins. Co., 2002 OK 2649 P.3d 703

See Willard v. Kelley, 1990 OK 127803 P.2d 1124

State ex rel. Dept. of Transp. v. Little, 2004 OK 74100 P.3d 707

only a small fraction appears to be associated with damaging earthquakes." Peter Folger & Mary Tiemann, Congressional Research Service, Human-Induced Earthquakes from Deep-Well Injection: A Brief Overview 2 (2016) (internal citations omitted) (emphasis added).

New Dominion excluded coverage for bodily injury and property damage "which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." Pollutants were defined in that policy as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."

New Dominion is very similar to that claimed by Crown in the present matter. The insured in New Dominion even cites to the same passage from Pipefitters Welfare Educational Fund v. Westchester Fire Insurance Company, 976 F.2d 1037, 1043 (7th Cir. 1992), that Crown cites here to explain its position.

New Dominion as well. The insurance company claimed that the waste water in question constituted "waste" and thereby fell within the definition of a "pollutant." We rejected that argument:

NAICO's contention that wastewater constitutes "waste" does not resolve this ambiguity. While wastewater may meet the definition of "waste" set out in the policy, the definition given for pollutants is more exacting. The wastewater must also constitute as "solid, liquid, gaseous or thermal irritant or contaminant." The wastewater does not meet this definition because the harm caused was not the result of the wastewater's irritating or contaminating nature. Rather, the earthquakes and the harm they caused were the result of wastewater being injected back into the ground under highly pressurized conditions. New Dominion makes a compelling point that the substance being injected into the ground could have been something more innocuous, such as fresh, potable water, and the result would have been the same.

New Dominion, 2021 OK 62